The CITY OF WILMINGTON, a municipal
corporation of the State of Delaware, and
the Department of Commerce, an agency
of the City of Wilmington, Plaintiffs Be-
low, Appellants,

v.

GENERAL TEAMSTERS LOCAL UNION
326, Affiliated with the International
Brotherhood of Teamsters, Chauffeurs,
Warehousemen and Helpers of America,
et al., Defendants Below, Appellees.

Supreme Court of Delaware.

May 24, 1974.

Perry F. Goldlust and Michael P. Maguire, Asst. City Sols., Wilmington, for appellants.

John E. Babiarz, Jr., of Biondi & Babiarz, Wilmington, for appellees.

Before HERRMANN, C. J., DUFFY, J., and TAYLOR, Judge.

DUFFY, Justice.

This appeal requires review of an order by the Court of Chancery in a labor dispute between the City of Wilmington and certain of its employees.

I

For a full statement of the pertinent facts we refer to two opinions of the lower Court which appear at 305 A.2d 338 (1973) and 290 A.2d 8 (1972).

The Court determined that members of defendant Union (Union) were public employees and as such were prohibited from striking by 19 Del.C. § 1312.[1] The Court issued an order enjoining "Defendants . . . from engaging in, causing or encouraging a strike or picketing in support thereof against . . . the City . . . upon the premises of the Wilmington Marine Terminal."

After entry of the order and on the City's application, a hearing was held for the purpose of determining whether defendants were in contempt of the injunction. The City alleged that defendants had both struck the Port of Wilmington and established a picket line. The Court refused to hold defendants in contempt, principally on the ground that there was insufficient evidence to support a finding that Union officials had caused or encouraged the work stoppages and picketing.

On appeal the City contends that there was a violation of the injunction and the Union and its officials were thus in con-

---

1. 19 Del.C. § 1312 provides in part: "No public employee shall strike while in the performance of his official duties."

tempt, particularly in light of the no-strike provision of the statute and the compelling policy reasons behind it. See City of Wilmington v. Local 320, Del.Ch., C.A. 4379 (New Castle County, Dec. 20, 1973); 37 A.L.R.3d 1147. Defendants argue that a strike did not occur and, if it did, there is no appeal from a finding of not guilty on a charge of criminal contempt.

## II

Before beginning an analysis of the case and attempting to identify issues, we must say that our approach differs somewhat from that taken by the parties. We have carefully considered what they argue but, except as adopted herein, we do not find it persuasive.

 A threshold issue which is fundamental in the litigation concerns the very nature of this contempt proceeding: is it civil—or criminal? The distinction between criminal and civil contempt is often cloudy at best but there are commonly used parameters for distinguishing the two. And this Court has discussed them. In State v. Mancari, Del.Supr., 223 A.2d 81 (1966), the Court stated that where the primary purpose is to punish, a contempt proceeding is criminal in character and, where the primary purpose is to coerce, it is civil. Stated somewhat differently and briefly, a contempt is criminal where the sanction sought or imposed is to redress a public wrong. And this is emphasized by the special procedure historically fol-

lowed in Delaware in a criminal contempt proceeding in Chancery which must be brought in the name of the State. See State v. Gilpin, 1 Del.Ch. 25 (1817); Rice v. Small, 1 Del.Ch. 68 (1819); State v. Nouris, 15 Del.Ch. 282, 136 A. 887 (1927); Klein v. State, 36 Del.Supr. 111, 127 A.2d 84 (1956); see also Chancery Rule 70(b) and 10 Del.C. § 7109. On the other hand, a contempt is civil in character when "instituted to preserve and enforce the rights of private parties to suits, and to compel obedience to orders and decrees made to enforce the rights and administer the remedies to which the court has found them to be entitled." In Re Nevitt, 8 Cir., Mo., 117 F. 448 (1902), quoted with approval in Bessette v. W. B. Conkey Company, 194 U.S. 324, 24 S.Ct. 665, 48 L.Ed. 997 (1904).[2]

 The Vice Chancellor regarded the proceeding against defendants as "quasi-criminal" and wrote in terms of "fine" and "imprisonment" in his opinion.[3] Such references are not conclusive, for the nature of the sanction does not determine the nature of the proceeding (nor does it convert a proceeding otherwise civil into a criminal hearing). Thus, imprisonment of a contemnor may be to punish for past acts or to coerce compliance with an order.[4] Likewise, payment of monies by a contemnor may be a punitive fine or compensation for damages sustained.[5]

 The Vice Chancellor had some doubt as to the precise nature of the pro-

2. We judicially notice that motions seeking a finding of contempt are filed frequently in the Court of Chancery and, while determination of the nature of such motions is rarely necessary, it is clear that the purpose of most of them is to coerce compliance with an order awarding relief to a plaintiff. And that is a civil proceeding. We do not know of a criminal contempt proceeding in Chancery since 1956.

3. It is worth noting that the City, in a supplemental complaint filed April 13, 1973, prayed (inter alia) for damages and such further necessary relief as the Court deemed appropriate.

4. We note in passing that aside from traditional concepts of contempt, alternative methods of coercing enforcement of its judgments are available to the Court of Chancery. See 10 Del.C. § 370.

5. Although there is some authority to the contrary [see, e. g., H. J. Heinz Company v. Suprior Court of Alemeda County, 42 Cal.2d 164, 266 P.2d 5 (1954)], the general rule seems to be that a court may impose a fine payable to an aggrieved party as compensation for special damages sustained as a result of contumacious conduct by the contemnor. 17 Am. Jur.2d, Contempt § 113.

ceeding, as indicated by his statement to the effect that the evidence was insufficient to convict "even under the preponderance of evidence rule." This is significant because the standard of proof required in a criminal contempt proceeding is proof beyond a reasonable doubt. State v. Nouris, supra.

∎ In any event, it is well settled that where the contempt is an admixture of civil and criminal elements, the latter dominate and determine the character of the action for purposes of procedure on review. Penfield Company of California v. Securities and Exchange Commission, 330 U.S. 585, 67 S.Ct. 918, 91 L.Ed. 1117 (1947); Nye v. United States, 313 U.S. 33, 61 S.Ct. 810, 85 L.Ed. 1172 (1941); Union Tool Company v. Wilson, 259 U.S. 107, 42 S.Ct. 427, 66 L.Ed. 848 (1922). Therefore, insofar as the Vice Chancellor's decision concerned criminal contempt, the City has no appeal from a finding of not guilty, Mancari v. State, supra, and we will not disturb that result either as to the individually named defendant officers or the Union.[6] However, this does not preclude appeal from the civil aspects of the case, compare Masonite Corporation v. International Woodworkers of America, AFL-CIO, Miss.Supr., 206 So.2d 171 (1967), and we proceed to review the case on that basis.

### III

Defendants argue that a strike within the meaning of 19 Del.C. § 1312 did not take place.

∎ Regrettably, the General Assembly has not defined the word "strike" in the statute, so we must determine its meaning for present purposes. And in so doing we find that even a cursory examination of case law points to two essential elements of the term in the context of a labor dispute. See 83 C.J.S. Strike, pp. 525–528; see also 29 U.S.C.A. § 142(2);[7] Restatement, Torts § 797 Comment (a).[8] Generally, there must be (1) some "concerted action" or "combined effort" by a group which is, (2) designed to exert pressure upon an individual or entity to accede to certain demands.

The Vice Chancellor found three instances involving concerted action by Union dockworkers in the midst of renegotiation of the agreement between the City and the Union: (1) an actual work stoppage on March 16, 1973 which lasted approximately an hour; (2) another stoppage when Union dockworkers refused to cross a picket line established, apparently, by wives and friends of Union members; and (3) a uniform refusal by Union dockworkers to work overtime, contrary to custom and practice. These facts are undisputed but their legal significance under 19 Del.C. § 1312 is much in controversy.

∎ Findings (1) and (2) certainly constitute a strike as we have defined it. And while there is some authority hold-

---

6. We are not satisfied that the criminal aspect of these proceedings was properly pursued procedurally. But, for purposes of appeal, we have ruled on tha facet of the case.

7. This part of the Labor Management Relations Act of 1947 (Taft Hartley Act) provides:

" . . . . .

(2) The term 'strike' includes any strike or other concerted stoppage of work by employees (including a stoppage by reason of the expiration of a collective-bargaining agreement) and any concerted slowdown or other concerted interruption of operations by employees.

. . . . ."

8. The *Restatement* defines the word "strike" this way:

"A strike is a concerted refusal by employees to do any work for their employer, or to work at their customary rate of speed, until the object of the strike is attained, that is, until the employer grants the concession demand."

ing otherwise,[9] we believe the better and more modern view to be that a mass refusal to work overtime does constitute a strike. Elevator Manufacturer's Association of New York v. International Union of Elevator Constructors, Local No. 1, S.D.N.Y., 342 F.Supp. 372 (1972); Meat Cutters Local P-575 (Iowa Beef Packers), 188 NLRB No. 2, 76 LRRM 1273 (1971); NLRB v. Leprino Cheese Company, 10 Cir., 424 F.2d 184 (1970), cert. denied 400 U.S. 915, 91 S.Ct. 173, 27 L.Ed.2d 154 (1970); First National Bank of Omaha v. NLRB, 8 Cir., 413 F.2d 921 (1969). See also City of Wilmington v. Local 320, Del.Ch., C.A. 4379 (New Castle County, Dec. 20, 1973). And since acceptance of overtime assignments was an established past practice here, this conclusion is not affected simply because overtime duties were voluntary and not required. Elevators Manufacturer's Association of New York v. International Union of Elevator Constructors, Local No. 1, supra; Meat Cutters Local P-575 (Iowa Beef Packers), supra.

▆▆▆ But such determination does not end inquiry. We hold that a strike occurred but some nexus must be established between the acts complained of (i. e., the strike) and defendants in order to support a finding of contempt.

### IV

▆▆▆ Upon review of the evidence the Court of Chancery concluded that the City had failed to demonstrate that named individual defendants engaged in or encouraged striking or picketing in support thereof at the Wilmington Marine Terminal.

Our analysis persuades us that this finding was not clearly wrong, and so it follows that so much of the judgment below holding that individual defendants should not be held in civil contempt must be affirmed. Levitt v. Bouvier, Del.Supr., 287 A.2d 671 (1972).

But the Court's decision also included a similar finding with respect to the Union as an entity. Reasoning that since the conduct complained of involved only Union members who were dockworkers and not clerical and supervisory personnel (members of the same Union), the Vice Chancellor stated that to hold the Union in contempt would "fly in the face of basic equitable principles." He also noted that the City should "take appropriate action" to deal with the wildcat strike which was apparently in progress.

▆▆▆ The difficulty with this approach is that simply declaring that Union leadership had lost control of the membership and characterizing activities as a "wildcat strike," permits a Union to circumvent the mandate of an injunctive order and to violate the spirit, if not the letter, of 19 Del. C. § 1312. Clearly, a union cannot accept benefits which flow from the statute and rights to collective bargaining and avoid responsibilities for what its members do by characterizing it as a "wildcat strike." [10]

▆▆▆ We are not satisfied that the Union is without legal responsibility for the strike in which its members actually

---

9. See C. G. Conn, Limited v. NLRB, 7 Cir., 108 F.2d 390 (1939); NLRB v. John S. Swift Company, 7 Cir., 277 F.2d 641 (1960).

10. Chapter 13 of Title 19 of the Delaware Code sets out the rights of public employees relating to organizing for collective bargaining purposes. Section 1306 thereof specifically provides that the union is the exclusive collective bargaining representative of the employees. The public employer is obliged to deal with it as a unit and refusal to do so is expressly prohibited by the terms of § 1309.

Moreover, the union is granted the right to submit unsettled labor disputes to the Departmen of Labor, 19 Del.C. § 1310, and the public employer must, upon request, deduct monthly union dues from employees' payrolls and deliver the withheld amount directly to the union treasurer, 19 Del.C. § 1311. These are the benefits to which the Union is entitled by law. In return, in § 1312 the Union is given the duty not to strike. See City of Wilmington v. American Federation of State, County and Municipal Employees, A.F.L.–C.I.O., Local 320, Del.Ch., 307 A.2d 820, 823 (1973).

engaged. Indeed, we think the controlling principle is well established: as long as a union is functioning as a union, it must be held responsible for the mass action of its members. United States v. International Union, United Mine Workers of America, D.D.C., 77 F.Supp. 563 (1948), aff'd 85 U.S.App.D.C. 149, 177 F.2d 29 (1949), cert. denied 338 U.S. 871, 70 S.Ct. 140, 94 L.Ed. 535 (1949); Portland Web Pressmen's Union v. Oregonian Publishing Company, D.Or., 188 F.Supp. 859, aff'd 286 F.2d 4 (1961), cert. denied 366 U.S. 912, 81 S.Ct. 1086, 6 L.Ed.2d 237 (1961); United Textile Workers of America v. Newberry Mills, Inc., W.D.S.C., 238 F. Supp. 366 (1965); Vulcan Materials Co. v. United Steelworkers of America, AFL–CIO, 4 Cir., 430 F.2d 446 (1970), cert. denied 401 U.S. 963, 91 S.Ct. 974, 28 L.Ed. 2d 247 (1971); Masonite Corp. v. International Woodworkers of America, AFL–CIO, supra. We therefore reverse so much of the order below which determines the Union cannot be held in civil contempt for the concerted activities of its members.

In sum, a distinction must be made between the position of the Union and that of defendant officers in the labor dispute. From exoneration of the latter it does not necessarily follow, either as a matter of fact or law, that the Union is also exonerated. Compare City of Wilmington v. American Federation of State, County and Municipal Employees, A.F.L.–C.I.O., Local 326, Del.Ch., 307 A.2d 820 (1973), in which the Court of Chancery determined that a defendant union was subject to penalties for violation of a no-strike order, but declined to hold individual union officials in contempt.

We make no determination as to what remedy the City may properly have against the Union, nor do we determine that relief is necessarily appropriate in this case. We decide only that the Union may be held responsible for the action of its members who engage in a strike in violation of the statute. What relief, if any, is to be accorded the City is a matter to be considered by the Trial Court in the first instance.

\* \* \*

The order of the Court of Chancery is affirmed in part, reversed in part, and the case is remanded for further proceedings consistent herewith.