James F. Niehoff, J.
Starting in about 1958 the plaintiff initiated a program or function called "Back-to-School Night” or "Open House” an activity which, since its inception, has been scheduled annually in each of the plaintiffs several buildings (presently seven in number). Although the format of the program may vary, generally speaking the activity consists of conducting parents through an abbreviated and simulated school day. It is scheduled once each year in each school building. The teachers’ schedule calls for them to arrive at 7:30 p. m. and the program begins at about 8:00 p. m. The teachers spend from one and one-half to two hours at the school on "Back-to-School Night”.
From 1958 through 1970 the teachers regularly attended and participated in this once-a-year function. No evidence was introduced to the effect that the teachers ever complained about attending or that the teachers ever asserted that they had no obligation to attend this function. Likewise, no evidence was introduced to the effect that the teachers ever claimed that this activity was not within the ambit of their teaching responsibilities.
While the 1971 contract negotiations were taking place, there was friction in the district between the teachers and the administration with respect to salaries. Nonetheless, in that year "Back-to-School Night” was held as scheduled in all but two of the district’s seven schools. In one of those two schools (Jerusalem Avenue) the faculty members voted not to attend even though the teachers’ association had taken the stand *284 that teachers should attend. Only two teachers attended. However, the school principal refused to cancel the program and the "Back-to-School Night” was held as scheduled but with a different format. A traditional "Back-to-School Night” was rescheduled for later in that same school year at the Jerusalem Avenue School and the teachers did attend as they had in the past. In the other school (Kennedy High School) the teachers refused to attend "Back-to-School Night” and the activity was not held in that school that year.
Since 1971 "Back-to-School Night” has been held annually without incident until this year. Toward the end of 1974 the plaintiff’s district principal became aware of the fact that the defendant teachers’ association was taking the position that its members’ participation in this program or tradition was a purely voluntary act on their part. Accordingly, in January of 1975, he advised the district teachers in the defendant’s bargaining unit, in writing, that attendance at "Back-to-School Night” programs in the respective schools was expected and required.
Despite this direction the defendant’s representative assembly voted to recommend that the association’s membership not attend the "Back-to-School Night” programs which were scheduled for February and March of 1975 and communicated that recommendation to the plaintiff’s teachers. The defendant association also advised its members that noncompliance with the district principal’s directive could not be established as insubordination. Moreover, the defendant association placed an advertisement in a newspaper serving the plaintiff’s community, addressed to the parents residing within the school district, which stated that no teachers would be present at the "Back-to-School Night” programs. With the exception of one school, where most of the teachers attended and participated few of the teachers in the remaining schools attended or participated in the "Back-to-School Night” program at their respective schools.
On February 26, 1975 immediately after the first scheduled evening of "Back-to-School Night” programs for the spring of 1975 plaintiff commenced this action for an injunction pursuant to section 211 of the Civil Service Law. A motion for a preliminary injunction was denied by Mr. Justice B. Thomas Pantano of this court. In his short-form order, Mr. Justice Pantano wrote: "Whether in fact the conduct of the defend *285 ant constitutes a strike is an issue to be determined at the trial.”
The order of Mr. Justice Pantano was affirmed by the Appellate Division, Second Department (47 AD2d 815).
Thereafter, the defendant association moved to dismiss the complaint urging that the action had become moot because the scheduled program dates had passed. Mr. Justice Joseph A. Suozzi of this court denied that motion holding that the probability of a recurrence of the situation took the issue outside of the purview of the academic. Plaintiff then amended its complaint so as to plead a cause of action for a declaratory judgment as well as one for an injunction.
As Mr. Justice Suozzi stated: "The issue in the action is whether or not attendance at these programs is part of traditional professional duties.”
The defendant teachers’ association contends, in essence, that teacher attendance at "Back-to-School Night” was voluntary, that plaintiff cannot impose an attendance requirement unilaterally since it is properly the subject of collective bargaining, and that, therefore, the teachers’ refusal to appear for "Back-to-School Night” cannot be classified as an illegal strike under the Taylor Law.
On the other hand, the plaintiff contends that attendance at and participation in the "Back-to-School Night” program is part of the teachers’ job responsibilities and that the association by encouraging and instigating their withholding of services has violated the Taylor Law prohibition against strikes.
The court agrees with the plaintiff’s contentions.
In Matter of Ahern v South Buffalo Ry. Co. (303 NY 545, 560-561) the Court of Appeals wrote: "It is elementary that there can be no agreement unless all of the parties involved intended to enter into one. Moreover, it is well-established contract law that in determining whether the parties possessed the necessary intention to contract, an objective test is generally to be applied. That means, simply, that the manifestation of a party’s intention rather than the actual or real intention is ordinarily controlling. Thus, in Hotchkiss v. National City Bank of New York (200 F. 287, 293, L. Hand, J., affd. 201 F. 664, affd. sub nom. National City Bank v. Hotchkiss, 231 U. S. 50), it was said: 'A contract has, strictly speaking, nothing to do with the personal, or individual, intent of the parties. A contract is an obligation attached by *286 the mere force of law to certain acts of the parties, usually words, which ordinarily accompany and represent a known intent. If, however, it were proved by twenty bishops that either party, when he used the words, intended something else than the usual meaning which the law imposes upon them, he would still be held, unless there were some mutual mistake, or something else of the sort.’ (See, also, Amend v. Hurley, 293 N.Y. 587, 596; Porter v. Commercial Cas. Ins. Co., 292 N.Y. 176, 183-184.) An agreement by conduct does not differ from an express agreement, except in the manner by which its existence is established.”
Thus, it is clear that an agreement or understanding can arise from the conduct or acts of parties as well as from their words.
In the case at bar there is no evidence to the effect that starting in 1958 the school district claimed, or the parties agreed, that "Back-to-School Night” was a part of the teachers’ professional duties and responsibilities. However, it is undisputed that since the inception of the program in 1958 the plaintiff has been scheduling a "Back-to-School Night” and that throughout this considerable number of years (with the two exceptions noted above) the district’s teachers have been attending and actively participating in the program without complaint. Indeed, the teachers have engaged in the program even though the collective bargaining agreements (which were introduced into evidence covering the years from 1968 through 1974) are silent as to "Back-to-School Night”. The fair, reasonable and obvious inference to be drawn from the mutual conduct of the parties is that this once-a-year after hours program has, by custom and usage, been regarded by both the administration and by the union members as part of their teaching duties and professional responsibilities and it is too late in the day for the teachers to maintain that they have an absolute, unilateral right to refuse any further participation in the program. In short, the court holds that the longstanding conduct of the parties establishes quite plainly that attendance at the "Back-to-School Night” is an activity which the parties have considered to be an integral part of the professional duties of the teachers and the teachers do not have the option to refuse to participate therein.
That this extracurricular activity has been so viewed by the parties is not at all surprising for the day in which the concept was held that the teaching duty was limited to class *287 room instruction has long since passed and teachers are well aware of the fact that there are some activities within the scope of their professional responsibilities which must be performed after the close of the regular school session.
The remaining question is whether the actions of the defendants constituted the instigation or encouragement of a strike within the meaning of subdivision 1 of section 210 of the Civil Service Law.
On the trial the defendant association acknowledged or conceded that if the teachers were legally obligated to attend "Back-to-School Night” the actions of the defendant association constituted a strike. That concession finds full support in the law.
Subdivision 1 of section 210 of the Civil Service Law states: "No public employee or employee organization shall engage in a strike, and no public employee or employee organization shall cause, instigate, encourage, or condone a strike.”
The word "strike” is defined by subdivision 9 of section 201 of the Civil Service Law as "any strike or other concerted stoppage of work or slowdown by public employees.”
Manifestly, the defendant teachers’ association instigated, encouraged or condoned the withholding of teachers’ services at "Back-to-School Night” in January and February of 1975 by recommending to the teachers that they not attend and by advising its members that noncompliance with the district principal’s directive could not be established as insubordination.
Hence, the plaintiff is entitled to judgment declaring that the defendant association’s actions in recommending that its members not perform the work entailed in "Back-to-School Night” (which extracurricular work the union members were legally obligated to perform) and in advising its members that noncompliance with the district principal’s direction to attend was not insubordination constituted the instigation or encouragement of a strike.
Having found that the members of the defendant association were legally obligated to attend "Back-to-School Night” the question raised and discussed at great length by the parties in their trial memoranda as to whether or not the concerted refusal to perform voluntary work may constitute a violation of the Taylor Law is no longer crucial to the determination of the case at bar. Nevertheless, there is authority, *288 which this court finds to be well reasoned, for the proposition that the no-strike provisions of the Taylor Law (Civil Service Law, art 14) may apply to a concerted refusal by public employees to perform work even though said work is not a bargained for condition of employment under a collective bargaining agreement and is, therefore, voluntary.
For example, in City of Wilmington v General Teamsters Local No. 326 (321 A2d 123, 126-127), the Delaware Supreme Court considering the question of whether or not the refusal, contrary to past custom and practice, by public employees to work overtime constituted a strike wrote that "while there is some authority holding otherwise, we believe the better and more modern view to be that a mass refusal to work overtime does constitute a strike. [Cases cited.] And since acceptance of overtime assignments was an established past practice here, this conclusion is not affected simply because overtime duties were voluntáry and not required.” A like conclusion has been reached in the private sector, in such cases as First Nat. Bank of Omaha v National Labor Relations Bd. (413 F2d 921), and Elevator Mfrs. Assn. of N.Y. v International Union of Elevator Constructors Local No. 1 (342 F Supp 372), wherein the United States District Court for the Southern District of New York wrote (p 374): "In today’s complicated interplay between management and labor, to say that merely because men are working they are not striking is too easy. It does not take into account that performing less work [overtime] than they have under a contract in existence for years and upon which management has relied is a refined form of torture every bit as destructive as a strike. It is a strike.”
For a contrary view the defendant relies upon an unreported decision of the Supreme Court, Erie County, in the case of City of Buffalo v Mangan (8 PERB 7547, par 7512). That case involved an application for a preliminary injunction under the Taylor Law. The city contended that a resolution of the Fire Fighter’s Association to refuse to accept "call in” overtime contravened the no-strike provisions of the Taylor Law. Special Term found that response to "call ins” was not part of the fighters’ work and denied the injunction. However, it should be noted that in affirming Special Term (City of Buffalo v Mangan, 49 AD2d 697) the Appellate Division, Fourth Department, was careful to point out that it was not adopting the reasoning of Special Term. The Appellate Division stated: "While we concur in the result reached by Special *289 Term, we do not decide, as the court did below, that defendants’ resolution not to respond to voluntary call-ins was beyond the reach of the no-strike prohibitions of the Taylor Law (see Civil Service Law, § 201, subd 9; § 210, subd 2, par [b]; § 211). Our decision to affirm the denial of the preliminary injunction is based solely on the fact that plaintiff has failed to make the requisite showing of irreparable harm”.
Although plaintiff is entitled to a declaration that the teachers were legally obligated to attend "Back-to-School Night” and that the actions of the defendant association constituted the instigation or encouragement of a strike, there is no necessity for granting an injunction at this time. The "Back-to-School Nights” scheduled in February and March have all passed so that the teachers’ association cannot be enjoined from encouraging its members not to attend on those evenings and the defendant association has encouraged its members to attend all programs scheduled while this decision was in process.
Doubtless, the defendant association will appeal this decision but the court has no reason to believe that said association will ignore the holding herein. Thus, the court perceives no present threat of any strike and, accordingly, will not issue an injunction. (See, generally, 12 Carmody-Wait 2d, NY Practice, §§ 78:2, 78:101 et seq.)