**COURT OF CHANCERY
OF THE
STATE OF DELAWARE**

SAM GLASSCOCK III
COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: April 2, 2019
Date Decided: April 3, 2019

David E. Ross, Esquire
Bradley R. Aronstam, Esquire
Ross Aronstam & Moritz LLP
100 S. West Street, Suite 400
Wilmington, DE 19801

Andrew White, *pro se*

William B. Chandler III, Esquire
Wilson Sonsini Goodrich & Rosati
8 West Laurel Street
Georgetown, DE 19947

Re:   *GMF ELCM Fund L.P., et al. v. ELCM HCRE GP LLC, et al.*
      C.A. No. 2018-0840-SG

Dear Counsel and Mr. White:

This Letter Opinion follows the Rule to Show Cause hearing, held on March 29, 2019 at 9:30 am. I begin with a brief recitation of the facts relevant to this Opinion; I note that, after several days of hearings,[1] there is far more evidence than warrants discussion in this Opinion of limited scope.

---

[1] These hearing days did not occur consecutively, as Mr. White failed to appear at our first scheduled hearing on January 30, 2019.

## I. BACKGROUND

This litigation involves a business that acquires and operates nursing homes, which once operated facilities in several states. The business consists of a complicated web of entities (the "Vehicles"). For purposes of this Opinion, rather than delve into the nuances of the business's organizational chart, I note only that some of these entities are wholly-owned by Defendant Andrew White. The Plaintiffs are investors in the Vehicles.

The Vehicles are, simply put, in trouble. They are battling litigation and state-initiated proceedings in a number of other states, most notably Vermont and North Carolina.[2] This is not merely a case of an entity that needs a receiver to manage its business or to assist in winding up its affairs. The nature of this business is nursing care, and as a result, negligent or incompetent leadership affects vulnerable people, whose lives are affected by these Vehicles' fates; residents at the nursing homes, whose health, care, and wellbeing depend on the Vehicles' proper management. Though yet unproven in this case, there are allegations that the delivery of food for the residents has been interrupted. There is evidence that residents' rent checks have gone uncashed, leaving them to question whether their housing is assured. There is evidence that residents have been "evacuated"[3] from certain facilities. There is

---

[2] Vermont appointed a receiver over the nursing homes in that state; the Vehicles lost their ability to operate nursing homes in North Carolina.

[3] This is Mr. White's own phrasing. *See* Feb. 14, 2019 Hr'g Tr., at 338:21.

evidence that employees who provide direct care to residents have, on multiple occasions, not been paid on time—sometimes days or even weeks late. I note this not to suggest that cases involving other business entities lack importance, nor that they cannot also be disruptive of human lives—they can be, and often are. What I do mean to suggest is that the exigencies of this particular business compel especially focused attention.

In light of this, the Plaintiffs—who, again, are investors in the Vehicles—filed suit on November 11, 2018, alleging breach of fiduciary duties and breach of contract. Along with the Complaint, they filed a Motion to Expedite and a Motion to Appoint a Receiver *Pendente Lite*. I entered an Interim Status Quo Order on December 12, 2018. A hearing on the Motion to Appoint a Receiver *Pendente Lite* was rescheduled on numerous occasions between December 2018 and January 2019, and was ultimately held on January 30, 2019. Various discovery motions were filed in the interim. On January 17, 2019, the Defendants filed a Motion to Stay the proceedings pending decision from a Vermont court regarding nursing facilities there; I denied the Motion to Stay on January 18, 2019.

On the eve of the hearing on the Motion to Appoint a Receiver *Pendente Lite*, then-counsel for the Defendants informed the Court that Mr. White would be unable to attend because he had been admitted to the hospital and had not been cleared to travel to Delaware; as such, he could not testify at the hearing on January 30. Given

3

that the hearing had already been rescheduled (by my count, at least three times, and on at least one occasion due to Mr. White's schedule and preferences), and given that Mr. White's counsel was present and ready to proceed, I informed the parties that the evidentiary hearing would commence without Mr. White. After that day's testimony, and based on evidence generated at that hearing, on January 30, 2019 I ordered that an interim receiver be appointed. I ordered that when Mr. White was able to travel, the evidentiary hearing would continue, at which time he could testify, and that I would then consider whether a receiver should be appointed *pendente lite.* With the parties' agreement, I appointed William B. Chandler III (the "Receiver") to serve as interim receiver on February 7, 2019, and ordered specifically that Mr. White cooperate with the Receiver, so that the Receiver could efficiently operate the business pending a decision on appointment *pendente lite*.

The continued evidentiary hearing was held on February 14 and 15, 2019. Mr. White appeared; however, his testimony was, frankly, disturbing. It was often rambling and, to my mind, non-linear. Moreover, parts of the testimony were incomprehensible, and Mr. White needed frequent reminders to slow down and speak clearly for the court reporter. At the conclusion of the hearing, I asked the parties for additional briefing.

On February 26, 2019, the Receiver requested an office conference, which was held on February 28. At that time, the Receiver described his interactions with

Mr. White and expressed serious concern about the Vehicles' operation. The Receiver detailed instances where Mr. White was unresponsive to the Receiver's requests for information, instances where the Receiver had been blindsided with matters needing immediate attention (but of which he was informed only at the last minute), such as approving payroll, and instances where Mr. White acted unprofessionally toward the Receiver. Mr. Chandler indicated that Mr. White had not yet provided him with access to the Vehicles' bank accounts. Mr. Chandler also requested to withdraw as receiver. Mr. White's counsel attended, but was unable to explain White's lack of cooperation to my satisfaction.

I indicated that I would grant the Receiver's motion to withdraw as soon as a successor receiver was identified. I also asked the Receiver to produce a list of the documents and information that would be necessary for a receiver to operate the Vehicles successfully, and I ordered Mr. White to produce those documents by a time certain, once identified. If he did not produce them in a timely fashion, I indicated that I would issue a Rule to Show Cause why he should not be held in contempt. Mr. Chandler filed the list of necessary items on March 1. I ordered Mr. White to produce that information by March 11, 2019.

Meanwhile, on March 6, the Defendants' counsel filed a Motion to Withdraw their representation. On March 11, I ruled that the Defendants should find successor counsel in a timely fashion, and then I would grant the Motion to Withdraw.

On March 12, the Receiver informed the Court that Mr. White had not complied with the Court's Order and had not produced the information necessary for a receiver by March 11. In a letter on March 13, Mr. White represented, through counsel, that he had "substantially compl[ied] with the Receiver's March 1, 2019 Requests." As later evidence indicated, this was not so, although some information had been produced.

On March 12, the Plaintiffs amended their Complaint to seek judicial dissolution of the Vehicles.

Also on March 12, Mr. Chandler filed a Motion to Modify the Order Appointing Receiver *Pendente Lite*, to allow the Receiver to make a capital call on the Vehicles' partners, and specifically Mr. White. As he was still without access to the Vehicles' bank accounts, Mr. Chandler had directed Mr. White to deposit nursing home patients' rent checks in a certain account, to be used by the Receiver to pay employees. Instead, in direct contravention of the Receiver's directive, Mr. White deposited the checks into an account for one of his own entities, stating that the money was owed to him. This money was unavailable to the Receiver, who accordingly could not pay wages to the employees. On March 13, I ordered Mr. White (via his entities) to repay the money he had diverted within 24 hours. He did not. On March 14, I again ordered Mr. White to repay the money he had diverted

6

from the Vehicles.[4]  On March 14, I gave the Defendants two weeks to retain successor counsel.

Also on March 14, I issued a Rule to Appear and Show Cause why Mr. White should not be held in contempt for failure to comply with the Court's Order to cooperate with the Receiver, for his failure to produce certain documents to the Receiver, and for his failure to turn over certain funds to the Receiver, as well as why he should not be sanctioned for his uncooperative efforts hindering litigation. The Rule to Show Cause hearing was scheduled for March 29, 2019, at 9:30 am.[5]

Mr. White failed to appear at the Rule to Show Cause hearing on March 29, 2019.  The Receiver and the Plaintiffs' counsel did appear.  The Plaintiffs' counsel shared with the Court an email from Mr. White, sent less than an hour before the hearing was to start, indicating that Mr. White would not be able to appear because he was ill and unable to travel.  The Receiver then gave an extensive presentation, informing me that the funds misdirected by Mr. White had been made available to the Receiver, and that some information and documents, which, per earlier Orders, Mr. White was supposed to have produced, had been made available to him, but that others had not.  He described the extensive efforts required of the Receiver's staff in

---

[4] Per the Receiver's representation at the March 29, 2019 Rule to Show Cause hearing, Mr. White ultimately returned the money.

[5] I also scheduled argument on the appointment of a permanent receiver and judicial dissolution for that day.  I have continued consideration of those motions, to allow Mr. White to participate.

7

an effort to preserve the business, which could have been avoided had Mr. White timely complied with this Court's Orders.[6]

The email sent by Mr. White to the Receiver and the Plaintiffs' counsel was not filed by Mr. White; however, I entered it into the record as a Court exhibit. In the letter, Mr. White explains that he is ill and unable to travel, but *not* why he did not request a continuance of the hearing before the Plaintiffs' counsel and the Receiver and his staff had prepared for the hearing and traveled to Georgetown. In an Order entered on March 29, I directed Mr. White to file a written explanation with the Court for his failure to appear at the March 29 hearing, including a physician's affidavit advising that Mr. White was prohibited from traveling to the hearing (and the date and time the physician so advised Mr. White). This was to be completed by April 1, 2019, at 5:00 P.M. EDT. Mr. White did not comply with that Order. He did not provide the Court with any further explanation as to why he was unable to travel or why he was unable to give the parties notice that he would not appear at the March 29 hearing. He did send an email (via an employee) to the Receiver at 5:08 P.M. on April 1, asking that I be informed that he would get such information to the Court in the future.

---

[6] Because the two weeks allocated to Mr. White to obtain successor counsel had passed, on March 29, 2019 I granted his counsel's Motion to Withdraw. At this time, neither Mr. White nor the Defendant entities are represented by counsel.

Given Mr. White's repeated failure to comply with Court orders, sanctions are appropriate. My reasoning follows.

## II.     ANALYSIS

### A. *Bad Faith Litigation*

Generally, litigation in this Court follows the "American Rule," where each side pays its own litigation costs. That said, there are some circumstances that warrant equitable fee shifting; namely, the so-called "bad faith exception" to the American Rule. The bad faith exception "applies in cases where the court finds . . . that a party conducted the litigation process itself in bad faith, thereby unjustifiably increasing the costs of litigation."[7] "Although there is no single definition of bad faith conduct, courts have found bad faith where parties have unnecessarily prolonged or delayed litigation, falsified records, or knowingly asserted frivolous claims."[8]

I find that Mr. White has engaged in bad faith conduct that warrants shifting fees here. Hearing dates have been moved several times to accommodate Mr. White's schedule, and on two separate occasions, Mr. White has failed to appear at a scheduled hearing. Prior to the January 30 evidentiary hearing, Mr. White's counsel did not notify the Court that Mr. White would not appear until the day before

---

[7] *Beck v. Atlantic Coast PLC*, 868 A.2d 840, 851 (Del. Ch. 2005).
[8] *Johnson v. Arbitrium (Cayman Islands) Handels AG*, 720 A.2d 542, 546 (Del. 1998).

the hearing was to take place. Notably, Mr. White's reported refusal to cooperate with the Receiver necessitated that I issue a Rule to Show Cause, returnable at 9:30 A.M. on March 29, 2019. It was not until the Plaintiffs' counsel and the Receiver *had arrived at the courthouse* for the March 29 hearing that Mr. White informed them that he would not attend. I offered Mr. White the opportunity to present argument and a physician's affidavit in mitigation, and he did not. To the extent Mr. White is ill, that is unfortunate, and the Court will obviously accommodate litigants in that regard. Mr. White, however, has shown repeated disregard for the time and efforts of litigants, counsel, the Receiver, and the Court—not to mention the Plaintiffs' financial expenditures caused thereby. This cannot stand unremedied.

Accordingly, I find it appropriate to shift to Mr. White the Plaintiffs' attorneys' fees and expenses incurred in connection with the March 29, 2019 hearing. The Plaintiffs should provide an affidavit showing the time incurred in this regard, including travel and preparation time.

*B. Contempt*

Given Mr. White's failure to comply with my Orders to cooperate with the Receiver, to provide specific information and documents to the Receiver, and to appear to show cause, I find Mr. White in civil contempt of this Court.

There are two types of contempt, civil contempt and criminal contempt. In distinguishing between civil and criminal contempt, the *form* of punishment is not

10

determinative.[9]  Rather, the difference between the two is the "character and purpose" of the sanction; civil contempt is remedial, whereas criminal contempt is punitive.[10]  In practice, the line between civil and criminal contempt can be murky. To that point, I find Vice Chancellor Laster's analysis particularly helpful:

> The distinction between criminal and civil contempt is often cloudy at best but there are commonly used parameters for distinguishing the two."  The fact that a party faces imprisonment as a potential sanction does not mean that the contempt is necessarily criminal.  Rather, the distinction turns on the purpose of the sanction and the means of purging it.  "[W]here the primary purpose is to punish, a contempt proceeding is criminal in character and, where the primary purpose is to coerce, it is civil."  Issuing an arrest warrant and confining a party falls under the heading of civil contempt if the court contemplates "confining [the] contemnor indefinitely until he complies with an affirmative command."  "Conversely, a fixed term of imprisonment is punitive and criminal if it is imposed retrospectively for a past act of disobedience, and cannot be avoided or abated by subsequent compliance with the court's order."[11]

This case bears some similarity to *Deutsch v. ZST Digital Networks, Inc.*, a books and records action.  To summarize the facts *Deutsch*, the defendants did not appear in court, and a receiver was ultimately appointed. The defendants repeatedly failed to comply with the receiver's requests. This Court issued various orders imposing sanctions, before ultimately holding the defendants in civil contempt for

---

[9] Both imprisonment and fines can be used as a sanction for either civil or criminal contempt.  *See Allen v. Div. of Child Support Enforcement ex rel. Ware*, 575 A.3d 1176, 1179, n.5 (Del. 1990); *DiSabatino v. Salicete*, 671 A.2d 1344, 1349–50 (Del. 1994).

[10] *See United Mine Workers of Am. v. Bagwell*, 512 U.S. 821 (1994).

[11] *Deutsch v. ZST Digital Networks, Inc.*, 2018 WL 3005822, at *13 (Del. Ch. June 14, 2018) (first quoting *City of Wilm. v. Gen. Teamsters Local Union 326*, 321 A.2d 123, 125 (Del. 1974); then quoting *id.*; then quoting *DiSabatino*, 671 A.2d at 1350; then quoting *id.*).

failure to comply and indicating that if they did not comply within six days' time, the Court would consider issuing warrants for the defendants' arrest. In his opinion, Vice Chancellor Laster noted that issuing arrest warrants would constitute civil contempt, because that remedy would seek to compel the defendants to comply with the receiver's requests.[12]

A finding of contempt must meet certain due process requirements. In cases of civil contempt, due process demands that the party be afforded notice and an opportunity to be heard.

As outlined above, Mr. White has, on numerous occasions, flouted this Court's Orders by simply refusing to comply. In contravention of this Court's February 7, 2019 Order, Mr. White has continually refused to cooperate with the Receiver. First, he has refused to timely supply the Receiver with the documents and information necessary to operate the Vehicles effectively. Second, he has treated the Receiver with disrespect. Third, he has disobeyed the Receiver's clear directives, *i.e.*, by depositing checks into his own entities' bank accounts rather than the Vehicles' bank accounts.

Moreover—and most egregiously—Mr. White failed to appear at the Rule to Show Cause hearing. The fact that Mr. White gave absolutely no prior indication—not to this Court, nor to the Plaintiff's counsel, nor to the Receiver—that he would

---

[12] *Id.*

not appear led to waste of time and effort. He subsequently disobeyed this Court's Order, which required him to provide a written explanation as to why he did not appear and why he did not give notice that he would not appear.

With respect to the Rule to Show Cause hearing, Mr. White's due process rights have been satisfied. He was given notice in this Court's March 14, 2019 Rule to Appear and Show Cause.[13] That Order identified Mr. White by name and stated the reasons why he could be held in contempt. It notified Mr. White of the date, time, and location of the hearing. He was given an opportunity to respond at that hearing, which was held on March 29, 2019. He did not take advantage of that opportunity. In my Order of March 29, 2019, I gave Mr. White an opportunity to explain his absence, and directed him to inform the Court by April 1, 2019 why he did not appear at the March 29 hearing. Again, Mr. White did not comply.

As such, and considering the relatively brief—but nevertheless dramatic—history of this case, I find Mr. White in civil contempt of this Court's March February 7, 2019 Order, which required Mr. White to cooperate with the Receiver. I also find Mr. White in civil contempt of my March 13, 2019 Order requiring Mr. White to make certain documents available to the Receiver. As a sanction, I direct Mr. White, personally, to pay the portion of the Receiver's fees, as well as costs and

---

[13] *See id.* ("the Order to Show Cause already provided adequate notice to the [Defendants] to satisfy due process").

13

expenses, that were caused by Mr. White's lack of cooperation, including those fees and expenses associated with the March 29 hearing. Mr. Chandler should provide the Court with a statement of those fees, costs, and expenses, representing that portion of the Receiver's fees that would have been avoided, but for Mr. White's contemptuous failure to comply.

To be clear, this is not a punitive sanction. Mr. White will have to cooperate with a receiver or custodian going forward. His behavior must change; otherwise, the business may be irremediably harmed. In addition, as I have pointed out above, the nursing home patients' well-being renders the smooth operation of the receivership particularly compelling. Nothing I have done, to this date, has caused Mr. White to take his responsibilities seriously. This sanction is designed to ensure that he does so going forward, or else he will face further sanctions.

To summarize, Mr. White must pay the Plaintiffs' reasonable attorneys' fees and expenses in connection with attending the March 29, 2019 hearing. Mr. White must also pay the Receiver's fees and expenses that were incurred as a result of Mr. White's uncooperative behavior. The amounts remain to be determined. To the extent the foregoing requires an order to take effect, IT IS SO ORDERED.

Sincerely,

*/s/ Sam Glasscock III*
Vice Chancellor