T. JAMES TUMULTY AND CITY OF JERSEY CITY, PROSE-
CUTORS, v. LEO ROSENBLUM, PAUL E. DOHERTY,
JOHN F. WILKINS, JOSEPH J. LOORI AND CARL A.
RUHLMANN, AS MEMBERS OF THE HUDSON COUNTY
BOARD OF TAXATION, AND THE HUDSON COUNTY
BOARD OF TAXATION, DEFENDANTS.

Argued January 16, 1946—Decided September 17, 1946.

Before Justices DONGES, HEHER and COLIE.

For the prosecutors, *Charles A. Rooney* (*John F. Lynch, Jr.,* of counsel).

For the defendants, *Mark Townsend,* Deputy Attorney-General.

The opinion of the court was delivered by

HEHER, J. Prosecutors challenge the validity of a resolution adopted by the Hudson County Board of Taxation on September 18th, 1945, providing that the individual prosecutor, Tumulty, "be granted a hearing before" the board on the ensuing September 22d, at the place therein designated, "with respect to his conduct before Part 2" of the board on the prior September 6th and 7th, and that, "pending such hearing and determination thereon," he "be * * * suspended from practice before" the board, "or any part thereof," and "denied the right to represent any litigants before" it, "or any part thereof." There was provision also for notice of the hearing; and notice was given accordingly. *Certiorari* was allowed to review the resolution on the day prior to the time thus fixed for the hearing. The *allocatur* directed that the writ operate as a *supersedeas;* and the parties were thereby granted leave to take depositions. Later, on defendants' motion, and after hearing, an order was entered by the court *en banc* precluding the taking of depositions upon the merits of the charges of misconduct, and confining the inquiry to the issue of the defendant board's power "to set down for hearing" and to determine "the charges of improper conduct" by the individual prosecutor, and to "suspend him from appearing or practicing" before the board pending the determination of the charges.

The action thus taken followed a report made by a member of the defendant board, sitting as a hearing commissioner, that during hearings held by him on the prior September 6th and 7th, the individual prosecutor, while acting as counsel for the City of Jersey City, "had made insulting remarks addressed to him" and "had refused to withdraw such insulting remarks or to apologize therefor as requested by him;" that he "had on several occasions persisted in talking to the exclusion of the hearing commissioner even after he had been ordered to cease," and "in general had been impertinent and disrespectful and had conducted himself in a manner unbecoming a member of the bar of this State," as a result of which the commissioner "was unable to continue his scheduled hear-

ings on September 7th, 1945, necessitating their adjournment indefinitely." Upon the coming in of this report, the board adopted a resolution suspending the individual prosecutor "from practice" before it, and denying him "the right to represent any litigants before" the board. This resolution was later rescinded; and then came the resolution under review. It was predicated upon a rule authorizing the board, "for cause," to "deny or suspend the right of any person to represent a party before it." This rule is defended as a proper exercise of the authority conferred by *R. S.* 54:3–14, providing that such bodies "may make all rules, regulations and orders not inconsistent with the rules, regulations and orders of the commissioner, and issue such directions as may be necessary to carry into effect the provision of this Title."

This is not a contempt proceeding. It is conceded that the defendant body is not clothed with the power to punish for contempt, either inherent, as an auxiliary to the due performance of its function, or statutory.

Thus, the issue posed is whether the defendant tribunal is invested with power to debar an attorney-at-law from the exercise of his professional representative office in that forum. We are clear that it is not.

The appellate function of the county boards of taxation is judicial in character; and attorneys and counsellors-at-law who represent parties to proceedings before such tribunals, in the pursuit of the remedies within their cognizance, thereby exercise the calling or profession of the law, for which they have been commissioned by the Governor on the recommendation of the Supreme Court. Such boards are termed *quasi*-judicial bodies; but the essential difference between a determination by a special tribunal and the adjudication of a court of general jurisdiction consists in the presumption of jurisdiction in the latter forum. *Riddle Co.* v. *New Auditorium Pier Co.,* 78 *N. J. L.* 520. See, also, *Freeholders of Ocean* v. *Township of Lacey,* 42 *Id.* 536. And, by the same token, the power to terminate or curtail the license thus granted, and to discipline the practitioner thereunder, resides exclusively in the Supreme Court, the tribunal whence it came.

It is not for other tribunals, whether of general or special and limited jurisdiction, to nullify or impair the efficacy of the Governor's commission. Our law was designed to avoid the evil of the English practice which permitted a man to practice in one court who had been stricken off the roll of another court. *In re Hahn,* 85 *N. J. Eq.* 510; *Hackensack* v. *Winne,* 116 *Id.* 87; *In re Wall,* 124 *N. J. L.* 560.

But it is said *contra* that these boards "are not courts of record over which the Supreme Court has reserved exclusive jurisdiction for the grant, impairment or revocation of the privilege of practicing law" in this state; and that the timely performance of the *quasi*-judicial functions of these tribunals is indispensable to the effective operation of the tax assessment machinery, and therefore public policy requires that these bodies have power "to control their own proceedings," and the rule in question "is reasonable and necessary for the orderly and expeditious disposition of the board's statutory duties." It is pointed out that the individual prosecutor's commission as an attorney-at-law merely authorized him "to appear in all the courts of record within" the state, "and there to practice as an attorney-at-law according to the laws and customs" of the State "for and during his good behavior in the said practice," and that it directed "all judges, justices, and others concerned * * * to admit him accordingly;" and it is said that this authorization "is limited to the practice of law in courts of record," and that since county boards of taxation and such *quasi*-judicial bodies are not courts of record, "neither the Supreme Court's grant nor reservation" of the power to suspend or revoke the license to practice "are applicable to them."

Such is plainly not the case. If it were, the attorney-at-law would not be answerable to the Supreme Court for derelictions in the multifarious legal activities that have no relation to litigation in courts of record; and thus there would be no protection against the culpable misconduct of erring practitioners in the other fields of legal service. And a disbarred attorney would not be excluded from practice in this wider sphere of the law. The practice of law is not confined to the

conduct of litigation in courts of record. Apart from such, it consists, generally, in the rendition of legal service to another, or legal advice and counsel as to his rights and obligations under the law, calling for a degree of legal knowledge or skill, usually for a fee or stipend, *i. e.,* that which an attorney as such is authorized to do; and the exercise of such professional skill certainly includes the pursuit, as an advocate for another, of a legal remedy within the jurisdiction of a *quasi*-judicial tribunal. Such is the concept of *R. S.* 2:111–1, classifying as a misdemeanor the practice of law by an unlicensed person. The attorney's commission is not to be circumscribed as defendants suggest, simply because of its specific authority to practice in all the state's courts of record. The grantee is therein constituted an attorney-at-law; and he is thus invested with all the powers usually exercisable as such. The character of the service rendered is the controlling consideration. Legal service that avoids the pitfalls leading to litigation is not of less value, economic and otherwise, than that contributed to the judicial solution of controversies arising out of unintelligent legal advice or no counsel at all. Indeed, it is usually of far greater advantage. The licensing of attorneys and counsellors is grounded in the public right to protection against unlearned and unskillful advice in matters relating to the science of the law. *Lowell Bar Association* v. *Loeb,* 315 *Mass.* 176; 52 *N. E. Rep. (2d)* 27; *Fink* v. *Peden,* 214 *Ind.* 584; 17 *N. E. Rep. (2d)* 95.

Thus it is that, in the course taken here, the defendant board invaded the exclusive province of the Supreme Court. It was open to the board to report the alleged misconduct to that tribunal for disciplinary action. Whether in such circumstances it had the power of suspension, pending the determination of the disciplinary proceeding, we have no occasion to decide. That was not the course pursued. If the present laws are inadequate to enforce the respect and obedience which are due all *quasi*-judicial bodies in the exercise of their public functions, recourse must be had to the legislative forum. The extension to such cases of the authority to punish for contempt no doubt will provide the antidote; and this will not

constitute an infringement of the jurisdiction of the Supreme Court. This power has been sparingly granted to statutory tribunals, due primarily to its intimate relation to individual liberties and its liability to abuse, but it should not be denied where the need is urgent, and its exercise may be had through the process of a court of general jurisdiction, if need be. At all events, we cannot supply the remedy except by the established mode.

The resolution is accordingly set aside.