**DELAWARE STATE BAR ASSOCIATION, a Delaware Corporation, Petitioner,**

v.

**Thomas ALEXANDER, Jr., Male Parents for Equal Rights, Inc., a Delaware Corporation, and the Second Wives Coalition, an unincorporated association, Respondents.**

Supreme Court of Delaware.

Submitted July 5, 1977.

Decided April 19, 1978.

Andrew G. T. Moore, II, and R. Franklin Balotti, Wilmington, for petitioner.

Thomas Alexander, Jr., respondent, pro se.

Arlen B. Mekler, Wilmington, for the corporate respondents.

Before HERRMANN, C. J., DUFFY and McNEILLY, JJ.

HERRMANN, Chief Justice:

The Delaware State Bar Association petitioned this Court for an injunction prohibiting the respondents from engaging in the unauthorized practice of the law, thus invoking this Court's inherent jurisdiction over the governance of the practice of law in this State. *Delaware Optometric Corporation v. Sherwood*, Del.Supr., 128 A.2d 812 (1957); [1] *In re A Member of the Bar*, Del. Supr., 257 A.2d 382 (1969).

---

1. In *Sherwood*, 128 A.2d at 816–7, this Court stated:

"The profession thus established arose out of a public necessity for the exclusion from the practice of law of unqualified persons. The attorney thus became an officer of the court and an important adjunct to the administration of justice. The profession from the very start was affected with a public interest and was created for the protection of the public.

\* \* \* \* \* \*

"Originally, anyone could practice law, but for the protection of the public it was found necessary to circumscribe that right. The advance of civilization and its material things has done nothing to change that fundamental fact. The existence of the legal profession is continued for the assistance of the public under limitations imposed by the court. Violations of those limitations are punished by the court through its process of citation for contempt.

\* \* \* \* \* \*

"The admission of attorneys to practice, and the exclusion of unauthorized persons from practice lie within the province of this court. A violation of this court's exclusive right to license attorneys at law by presuming to practice law without such license is a contempt of its authority and punishable as such."

After an initial hearing upon the petition for injunction, this Court appointed Vice Chancellor Grover C. Brown as Special Master to hear and determine all issues of fact raised by the petition and to make appropriate conclusions of law; and, *pendente lite,* this Court issued a temporary restraining order dated March 22, 1977, enjoining the respondents from:

"(1) Appearing before any Court or Judge in this State, or upon any legal document, as counsel or 'friend' for or on behalf of any other person; and

"(2) Preparing (except typing) any papers or documents to be submitted to any Court or Judge in this State for or on behalf of any other person; and

"(3) Holding himself or itself out to the public as legal adviser or legal counsel for or on behalf of any other person, or routinely acting as such or operating an office for such purpose."

While the injunction proceeding was thus under consideration by the Special Master, this Court took judicial notice of public information that the respondent Thomas Alexander, Jr., had appeared before the Superior Court and the United District Court of Delaware "as counsel or 'friend' for and on behalf of one James Thomas Hailstone"; and, thereupon, this Court referred to the Special Master the additional question of "whether Thomas Alexander, Jr., is, in fact and in law, guilty of contempt of the Order" entered earlier restraining him from such activity.

The Special Master has filed separate Reports as to each referral.

## I.

Upon the original referral, the Special Master made the following findings of fact:

"1. The petitioner is the Delaware State Bar Association, duly organized under and by virtue of the law of the State of Delaware. It was authorized to bring this action against the respondents by vote of its membership.

"2. The respondent Male Parents for Equal Rights (MPFER) is a Delaware cor-poration whose purpose is set forth in its certificate of incorporation as contained in respondents' Exhibit 8. The respondent The Second Wives Coalition is an unincorporated association which operates in conjunction with MPFER at the same address and by means of the same letterhead, and which thereby acquiesces in and joins with the activities taken by the respondent MPFER. The respondent Thomas Alexander, Jr. is the Executive Director of MPFER and acts with the authority of and on behalf of both MPFER and The Second Wives Coalition.

"3. The respondent Thomas Alexander, Jr. is not a member of the Delaware Bar, is not an attorney, and has had no formal legal education. The day-to-day activities of the respondents are in no way conducted under the supervision of a person admitted to the Delaware Bar.

"4. The respondents have appeared before Judges of the Courts of this State for the purpose of advising and being of assistance to parties to litigation then being conducted in the Courts of this State at times when such parties were not being represented by an attorney admitted to the Bar of this State. Specifically:

"(a) On April 21, 1975 the respondents, through Thomas Alexander, Jr., appeared at a chambers conference before The Honorable Andrew D. Christie, Judge of the Superior Court, with regard to pending motions filed *pro se* by A\* \* \* B\* \* \* in Superior Court actions *B\* \* \* v. B\* \* \**, C.A. 5442, 1974, and *B\* \* \* v. State of Delaware*, C.A. 5077, 1975. Although the root of this litigation dealt with the extent of Mr. B\* \* \*'s obligation to pay support, the purpose of the conference was not to deal with the issue of support but rather with the issues presented by Mr. B\* \* \*'s motion for a stay of certain proceedings and for the right to have a trial by jury. Mr. B\* \* \* was not represented by an attorney of record at the time. Whether by express statement or otherwise, the respondent Alexander gave indication that his purpose in being present was to rep-

resent Mr. B* * * in connection with the aforesaid litigation. Respondent Alexander explained that he was not a member of the Bar, but that he felt that Mr. B* * *. had a right to be assisted by a person of his choosing whether or not such person was a member of the Bar. Judge Christie thereupon ruled that respondent Alexander could not represent or act on behalf of Mr. B* * * at the conference and requested that Alexander leave the room. The respondent Alexander, in a respectful manner, indicated his reluctance to leave and requested that the conference be delayed in order that he might appeal Judge Christie's ruling to President Judge Stiftel. This request was also denied by Judge Christie. Finally, at the request of Mr. B* * * more so than in compliance with Judge Christie's directive, the respondent Alexander left the room. The respondent Alexander was admittedly there for the purpose of assisting Mr. B* * * in any way that he could with regard to the matters to be discussed at the conference.

"(b) On September 23, 1975 the respondent Thomas Alexander, Jr. appeared in the Family Court before the Honorable Elwood F. Melson, Jr. along with a juvenile facing a hearing on charges of delinquency. The mother of the juvenile was also present. At such hearing, the respondent Alexander advised the juvenile to enter a plea of 'not guilty' to the charge. Judge Melson ruled that he could not advise or act on behalf of the juvenile and ordered him to leave the courtroom. The respondent Alexander resisted his ruling and eventually his removal was facilitated through a bailiff. Upon leaving the courtroom the respondent Alexander endeavored to have the juvenile and his mother leave also. * * It was because of this relationship that Mr. Alexander was attempting to be of assistance to the juvenile during the proceeding even though the mother of the juvenile was also present.

"(c) On January 23, 1976 the respondent Thomas Alexander, Jr. was present in the Family Court at a hearing before the Honorable Robert W. Wakefield involving a petition for decrease in support payments. The respondent Alexander seated himself at counsel table along with the litigant A* * * M*. * *. At the time Alexander had in his possession a large file containing many documents. Wilfred J. Smith, Jr., Esquire, counsel for the other party to the litigation objected to Alexander acting as attorney on behalf of Mr. M* * *, although he had no objection to Alexander remaining in the courtroom. The respondent Alexander took issue with this and argued to the Court that Mr. M* * * had the right to be assisted by any person of his choice and further indicated that he had knowledge of the various papers in the file, all of which would be needed by Mr. M* * * during the presentation of his case. He made clear that his purpose in being in the courtroom was to assist Mr. M* * * during the course of the hearing. Judge Wakefield ruled that he could not assist or advise Mr. M* * * during the proceeding and gave him the choice of either leaving or removing himself to the rear of the courtroom. After some discussion, the respondent Alexander chose the latter option, removed himself to the rear of the courtroom and the matter proceeded without further complications with regard to the right of Alexander to assist Mr. M* * *.

"(d) At hearings held before the Family Court of New Castle County on July 28, 1976 and August 6, 1976, in a matter initiated by K* * * C* * * against her husband seeking the production and custody of children born of the marriage, the respondent Thomas Alexander, Jr. appeared before the Court along with Mr. C* * * for the purpose of assisting and advising him during the course of the proceedings, expressly asserting a right on behalf of Mr. C* * * to have him do so pursuant to Rule 200(b)(2) of the Rules of the Family Court and Article 1, § 9 of the Delaware Constitution of 1897. He was refused the right to do so on both occasions.

"(e) On April 6, 1977 at a hearing in the Family Court of New Castle County in the case of *L\* \* \* v. L\* \* \**, No. B–653, the respondent Thomas Alexander, Jr. appeared along with the petitioner, F\* \* \* L\* \* \*, and allegedly as a 'friend of the Court' presented documents to the Court on behalf of the petitioner for the purpose of showing that the petition of F\* \* \* L\* \* \* for custody of his three children had been filed in the Family Court prior to the entry of a divorce decree granted to Mrs. L\* \* \* in the State of Texas purporting to retain jurisdiction over the custody issue and also prior to receipt of a copy of the Texas divorce petition by the Sheriff of New Castle County for service upon the father, F\* \* \* L\* \* \*. While perhaps providing necessary information to the Court, this action by the respondent Thomas Alexander, Jr. was taken on behalf of and in obvious effort to further the interest of the petitioner F\* \* \* L\* \* \* on whose behalf Alexander presented himself in Court.

"5. Under date of January 3, 1976 the respondent MPFER, over the signature of Thomas Alexander, Jr. as its Executive Director, wrote to the Clerk of the Family Court of New Castle County requesting transcripts of hearings held before Honorable Robert W. Wakefield on November 26, 1975 and August 5, 1975. This request was made on behalf of A\* \* \* M\* \* \*, a party to action No. A–179, then pending in the Family Court. The transcripts were sought for the purpose of enabling M\* \* \* to pursue an appeal *pro se* to the Supreme Court of the State of Delaware, and the letter was accompanied by notice of appeal signed by M\* \* \* indicating that he would thereafter be proceeding in all matters *pro se*. The attached documents were typed by the respondent Alexander on behalf of M\* \* \*.

"6. The respondents, through Thomas Alexander, Jr., have engaged in the drafting and preparation of pleadings and written applications in order that they might be used by litigants proceeding *pro se* in pending litigation before the Courts of this State as indicated by the following:

"(a) The respondent Alexander drafted and prepared for the signature of A\* \* \* M\* \* \* a pleading filed in the Supreme Court of the State of Delaware styled as 'Application For Enlargement of Briefing Schedule Based Upon Delay In Receipt Of Transcript Pursuant to Supreme Court Rule 7(8)(a).'

"(b) The respondents drafted or assisted in the drafting and preparation of a pleading filed *pro se* by J\* \* \* H\* \* \* in the Family Court matter of *H\* \* \* v. D\* \* \**, No. L4–4987, entitled 'Motion To Revoke Support Order' wherein it was requested that the Court revoke an order of support entered December 16, 1974.

"(c) In the matter of *B\* \* \* v. B\* \* \**, No. 303, 1976 in the Supreme Court of the State of Delaware, the respondents through Thomas Alexander, Jr. drafted and prepared on the letterhead of MPFER for the signature of W\* \* \* B\* \* \*, proceeding *pro se*, a document entitled 'Letter Motion To Withdraw Appeal.'

"(d) In the matter of *D\* \* \* v. D\* \* \**, No. 232, 1976 in the Supreme Court of the State of Delaware, the respondents through Thomas Alexander, Jr. drafted and prepared for the signature of G\* \* \* D\* \* \*, proceeding *pro se*, a letter pleading entitled 'Letter of Response To Motion To Dismiss.'

"(e) In the matter of *E\* \* \* J\* \* \* v. Chief Judge Robert D. Thompson, et al*, No. 36, 1977 in the Supreme Court of the State of Delaware the respondents, through Thomas Alexander, Jr., drafted and filed a notice and petition for Writ of Prohibition directed against all Judges and Clerks of the Family Court of the State of Delaware.

"(f) Under date of January 24, 1977 in the matter *A\* \* \* v. J\* \* \**, No. 5–5514 in the Family Court of New Castle County, the respondents, through Thomas Alexander, Jr., drafted and prepared for the signature of E\* \* \* J\* \* \*, two documents on the letterhead of MPFER requesting action by the Court, one being

'Request For Continuance' and the other being styled 'Request For Subpoena Duces Tecum.'

"(g) On behalf of one F* * * C* * * the respondents, through Thomas Alexander, Jr., prepared for filing by the said F* * * C* * * the documents necessary for him to institute an action against his wife for the support of their minor child.

"(h) On behalf of M* * * J* * * the respondents, through Thomas Alexander, Jr., prepared on standard forms utilized by MPFER, and for the purpose of allowing her to proceed *pro se,* pleadings entitled 'Petition For Divorce,' 'Affidavit Of Appearance In Divorce Action,' 'Answer To Petition For Divorce,' all of which were therefore drafted and prepared by the respondents so as to enable the said M* * * J* * * to file such pleadings in the Family Court for New Castle County for the purpose of obtaining an uncontested divorce from her husband.

"7. By letter dated February 25, 1976 and submitted in the Family Court action of *H* * * v. D* * * over the signature of Thomas Alexander, Jr. as Executive Director for MPFER, respondents drafted, prepared and filed a written argument, supported by statutory references, seeking the withdrawal of the complaint in a reciprocal nonsupport action initiated against Mr. H* * *.

"8. Under date of February 4, 1976 the respondents, through Thomas Alexander, Jr., as Executive Director, prepared, signed, served and filed in the Family Court action of *P* * * v. W* * *, No. 5-6622 a pleading entitled 'Motion To Dismiss For Lack Of Standing' requesting on behalf of the respondnent J* * * P* * * that the complaint in the above action be dismissed with costs assessed against the complainant and with a further request for a stay of any hearing on the complaint until the motion to dismiss had been decided.

"9. The respondents, primarily through Thomas Alexander, Jr., have rendered advice and assistance to persons by making available and pointing out to them specific provisions of the Delaware Code and by informing them of the manner in which to proceed in the Family Court in order to avail themselves of such statutory provisions. Specifically:

"(a) With regard to the habeas corpus action brought by K* * * C* * * against her husband, referred to previously herein, the respondent Thomas Alexander, Jr. pointed out and made available to Mr. C* * * those portions of the Delaware Code which, obviously in the opinion of Mr. Alexander, were applicable to the particular situation involving Mr. C* * *.

"(b) With regard to the matter of *B* * * v. B* * *, No. 303 in the Supreme Court of the State of Delaware referred to previously herein, the respondent Thomas Alexander, Jr. showed to Mr. B* * * those provisions of the Delaware Code which, obviously in the opinion of Mr. Alexander, were applicable to his right to appeal to the Supreme Court. The respondent Alexander further provided Mr. B* * * information with regard to the procedure for filing an appeal praecipe with the Family Court.

"(c) In the matter of *L* * * v. L* * *, Family Court Action B-653, as recited and found by Judge Wakefield in his opinion filed as petitioner's Exhibit 14, the litigant F* * * L* * * admitted that in bringing his petition before the Family Court he acted upon the advice of the respondent Thomas Alexander, Jr. to get the matter into a Delaware Court before the custody issue came up in pending Texas litigation.

"(d) The respondent Thomas Alexander, Jr. showed to F* * * C* * * provisons of the Delaware Code which, in the opinion of the respondent Alexander, entitled Mr. C* * * to bring an action against his wife for the support of their child. The respondent Alexander further advised Mr. C* * * on the procedure for initiating such an action in the Family Court.

"(e) The respondent Thomas Alexander, Jr. showed and made available to

M* * * J* * * provisions of the Delaware Code concerning the grounds and procedure for obtaining a divorce under the laws of the State of Delaware and explained them to her as he understood them while in the process of preparing pleadings to be filed in the Family Court so as to proceed *pro se* to obtain a divorce.

"10. By letter dated March 21, 1977 the respondents, on behalf of M* * * J* * *, wrote to her husband, J* * * J* * *, advising him as to what was required of him under existing Delaware law to enable his wife to obtain an uncontested divorce from him in the Courts of this State and also advising him that since his wife was seeking the divorce he could not be compelled to pay alimony under Delaware law. In such letter the respondents undertook to provide Mr. J* * * with a certified copy of the divorce decree at such time as it was granted even though, in the same letter, the respondent Thomas Alexander, Jr. specifically pointed out that he was not a lawyer.

"11. The respondent MPFER has solicited business by running an advertisement in the News Journal newspapers in the City of Wilmington which advertisement was particularly and specifically designed to attract communications and membership in MPFER from persons in need of advice or assistance with regard to matters of divorce, separation, custody of children, child support, and visitation of children. Approximately one-half of the responses to such advertisement resulted in personal conferences between persons attracted by the advertisement and representatives of the respondents concerning the aforesaid matters.

"12. In at least some instances, the respondents have requested that persons seeking their assistance first join their organization by paying an annual membership fee of either $17 or $25 before respondents act in drafting or preparing documents and offering other services and assistance.

"13. Respondents do not limit their services to impecunious persons who are unable to afford the services of a trained and licensed attorney."

\* \* \* \* \* \*

Upon those Findings of Fact, the Special Master made the following Conclusions of Law:

"1. The petitioner Delaware State Bar Association is a lawful organization in good standing as to which every person admitted to the practice of law in Delaware by the Supreme Court of Delaware is automatically entitled to membership. Its objectives include the preservation of a proper standard for admissions to the Delaware Bar, the maintenance of honor and dignity of the profession and the upholding of the principles of legal ethics. Petitioner's by-laws provide for a Committee on Unauthorized Practice which Committee, in the name of the petitioner, has the authority to institute proceedings at law or equity against persons, lay or corporate, engaged in the unauthorized practice of law. Petitioner therefore has standing to maintain the present action.

"2. In the following manner, (1) through the preparation and drafting of pleadings and other documents to be used by persons appearing *pro se* before Delaware Courts, (2) by the drafting, preparation and filing of pleadings on behalf of litigants, both as MPFER without qualification and as 'friend' for the named litigant, (3) by pointing out provisions of the Delaware Code deemed applicable by respondents to the needs of a particular litigant and informing him of a procedure to be followed in reliance on such Code provisions, and (4) by appearing in Court proceedings conducted by members of the Delaware judiciary for the purpose of assisting and speaking on behalf of a litigant during the course of such proceedings, respondents have engaged in acts and practices which fall within the generally accepted definitions of the practice of law.

"3. Respondents have no training or education which would qualify them to advise others as to their rights under Delaware law and court procedures, they

are not members of the Delaware Bar, nor can they qualify for admission to the Delaware Bar.

"4. As a consequence of the foregoing the respondents, by virtue of the activities set forth previously herein, are guilty of the unauthorized practice of law and are therefore in contempt of the exclusive power and authority of the Delaware Supreme Court to regulate the practice of law in this State.

"5. Because of the continuous activities of the respondents, the purposes set forth in the certificate of incorporation of MPFER and their extended reliance upon newspaper advertisements and continued solicitation of business through annual membership fees, the conduct of respondents cannot be excused as mere isolated incidents of assistance to a person needing legal advice.

"6. The fact that respondents also offer services and assistance that do not fall within the practice of law, and the acknowledged fact that such other services and assistance may be of considerable benefit to persons beset with domestic and family problems, do not justify the venture of respondents into areas which necessarily do involve the practice of law and as to which they lack even basic legal knowledge and training.

"7. By Delaware law, the Delaware Supreme Court has both the authority and the exclusive right to punish the unauthorized practice of law through the power of contempt and injunction.

"8. Because of the foregoing factors, a case has been presented beyond all reasonable doubt which warrants the imposition of appropriate punishment and/or injunctive relief against the respondents Thomas Alexander, Jr., Male Parents For Equal Rights, Inc. and The Second Wives Coalition."

\*   \*   \*   \*   \*   \*

The respondents filed no exceptions to the Reports of the Special Master. Nevertheless, at oral argument the respondents were permitted to present the following objections pertaining to the injunction proceeding:

(1) The respondents have a constitutionally protected right to engage in the activities here involved;

(2) The Special Master's Conclusions of Law Nos. 2, 4, and 6 are too broad and sweeping; and

(3) *Del.Const.*, Art. I, § 7,[2] permits lay persons "to gain access to the courts for a criminal defendant" via *habeas corpus* proceedings.

Neither the first nor the second of the respondents' objections merit further discussion; they are hereby overruled.

As to the third objection: It is manifest on the face of Art. I, § 7 that the constitutional protection there set forth relates solely to the right to compulsory process for the procurement of witnesses to appear on behalf of the defendant in a criminal case. Clearly, a prohibition against appearing as "friend" for another in court or on court documents, in habeas corpus proceedings or otherwise, does not contravene any constitutional guaranty under Art. I, § 7.

Delaware has long recognized the concept of a next friend who may seek the protection of the court on behalf of one whose disability prevents it. This was recognized in *Wooley on Delaware Practice,* § 128:

> ". . . The *next friend* is one who, though not regularly appointed guardian, represents in a suit a party thereto, who is not sui juris, as an infant or an insane person. . . . The next friend is not a party to the suit. *He is simply a person appointed by the court to look after the interest of one, who by reason of his legal disability, is unable to look after and*

---

**2.** *Del.Const.*, Art. I, § 7, provides in pertinent part:

"In all criminal prosecutions, the accused hath a right \* \* \* to meet the witnesses in their examination face to face, to have compulsory process in due time, on application by himself, his friends or counsel, for obtaining witnesses in his favor \* \* \*."

*manage his own interests. . . ."*
(Emphasis added).

Compare Superior Court Civil Rule 17(c) providing for the appointment by the Court of "next friend" for a juvenile or incompetent person.

Thus, the respondents' effort to invoke the doctrine of "next friend" by reliance upon the language of Article I, § 7 of the Delaware Constitution, is wholly inappropriate under the circumstances, and contrary to Delaware law. Clearly, Art. I, § 7 is not authorization for anyone to represent other litigants in court under the guise of being a "friend". The purpose of the Art. I, § 7 provision is simply to give one who is under some disability, physical or legal, the protection that another may act for him in the procurement of subpoenas assuring the appearance of witnesses to testify on his behalf at the trial of a criminal charge against him. The respondents' reliance upon this constitutional guaranty is patently absurd.

\* \* \* \* \* \*

■ We confirm especially the conclusion of the Special Master that the activities engaged in by the respondents, as described in the Report, constituted the unauthorized practice of law. The authorities support his conclusion beyond question:

"In general, one is deemed to be practicing law whenever he furnishes to another advice or service under circumstances which imply the possession and use of legal knowledge and skill. The practice of law includes 'all advice to clients, and all actions taken for them in matters connected with the law.' \* \* \* Practice of law includes the giving of legal advice and counsel, and the preparation of legal instruments and contracts of which legal rights are secured. \* \* \* Where the rendering of services for another involves the use of legal knowledge or skill on his behalf—where legal advice is required and is availed of or rendered in connection with such services—these services necessarily constitute or include the practice of law." *In re Welch,* Vt. Supr., 185 A.2d 458, 459 (1962).

\* \* \* \* \* \*

"The practice of law [in addition to conduct of litigation in courts of record] consists generally, in the rendition of legal service to another, or legal advice and counsel as to his rights and obligations under the law, calling for a degree of legal knowledge or skill, usually for a fee, or stipend, i.e. that which an attorney as such is authorized to do; and the exercise of such professional skill certainly includes the pursuit, as an advocate for another, of a legal remedy within the jurisdiction of a quasi judicial tribunal." *Tumulty vs. Rosenblum,* N.J.Supr., 134 N.J.L. 514, 48 A.2d 850, 852 (1946).

\* \* \* \* \* \*

"In determining what is the practice of law, it is well settled that it is the character of the acts performed and not the place where they are done that is decisive. The practice of law is not, therefore, necessarily limited to the conduct of cases in court but is engaged in whenever and wherever legal knowledge, training, skill and ability are required." *Stack v. P. G. Garage, Inc.,* N.J.Supr., 7 N.J. 118, 80 A.2d 545, 546 (1951); *In re Baker,* N.J.Supr., 8 N.J. 321, 85 A.2d 505 (1951).

\* \* \* \* \* \*

"The weight of authority, where such issue has been presented, is that the character of the service and its relation to the public interest, determines its classification,—not whether compensation be charged therefor." *Grievance Committee v. Dean,* Tex.Civ.App., 190 S.W.2d 126, 129 (1945).

\* \* \* \* \* \*

"The soundness of this position is the more evident if it is borne in mind that the underlying purpose of regulating the practice of law is not so much to protect the public from having to pay fees to unqualified legal advisors as it is to protect the public against the often drastic and far-reaching consequences of their inexpert legal advice." *In re Baker,* N.J. Supr., 8 N.J. 321, 85 A.2d 505, 514 (1951).

The respondents produce no authority to the contrary.

\* \* \* \* \* \*

Accordingly, upon the original referral in the injunction proceeding, the following order will be entered by this Court:

"IT IS ORDERED, ADJUDGED, AND DECREED: [3]

"1. That the Final Report of the Special Master be and it is hereby confirmed;

"2. The respondents Thomas Alexander, Jr., Male Parents For Equal Rights, Inc., The Second Wives Coalition, their associates, agents, servants, employees, officers, and all persons acting in concert with them who are not members of the Delaware Bar, be and they hereby are permanently enjoined from assuming or attempting to practice law, directly or indirectly, and in particular Thomas Alexander, Jr., Male Parents For Equal Rights, Inc., The Second Wives Coalition, their associates, agents, servants, employees, officers, and all persons acting in concert with them who are not members of the Bar of Delaware, are permanently enjoined and restrained from committing, performing or carrying out any of the following services and acts:

"(a) Giving legal advice to any person concerning divorce, separation, support or child custody or visitation matters;

"(b) Drafting, preparing, or supervising the execution of pleadings, motions, or other legal documents with respect to the legal rights of any party in connection with any divorce, separation, support, child custody or visitation matters, or advising or counseling any person concerning such documents, the effect thereof, or the law applicable thereto;

"(c) Advertising or soliciting in any manner to induce any person to consult them, or any of them, their associates, agents, servants, employees or officers who are not members of the Bar of Delaware, concerning the preparation or execution of any legal document pertaining to divorce, separation, support, child custody or visitation matters, or concerning the legal effect thereof or the operation and effect of laws applicable thereto;

"(d) Representing or holding out to any person in any manner that they, or any of them, their associates, agents, servants, employees or officers who are not members of the Delaware Bar, are willing and legally qualified to furnish legal advice or services regarding divorce, separation, support, child custody or visitation matters, or the execution of any legal documents relating thereto, or the operation and effect of laws applicable thereto;

"(e) Consulting with any person and giving legal advice with respect to any matter or thing affecting such person's legal rights under the laws of the State of Delaware, or to advise such person with respect to any action to be taken or avoided under any laws, statutes, court decisions, rules or regulations or otherwise of this State;

"(f) Rendering legal opinions to any person and making recommendations for the acts, rights or remedies of such person to enable him to comply with or to avoid any laws, statutes, court decisions, rules or regulations applicable to his rights or remedies;

"(g) Appearing before any court or judge in this State, or upon any legal document, as counsel or "friend" for or on behalf of any other person.

"(h) Preparing any papers or documents to be submitted to any court or judge in this State for or on behalf of any other person;

"(i) Giving legal advice or rendering legal services of any kind or nature to any person."

---

**3.** The terms of this injunctive order are fashioned especially to govern the future activities of the respondents in the light of their numerous wilful, persistent, and organized activities as set forth in the Report of the Special Master. The terms of the instant order are not intended to affect the legitimate activities of others engaged regularly as marriage counsellors, prisoner's aides, or other legitimate endeavors which do not encroach upon the practice of law.

## II.

Upon the supplemental referral relative to the contempt proceeding, the Special Master made the following Findings of Fact:

"(1) That on April 6, 1977 and April 7, 1977, the respondent Alexander was fully aware of the order of the Supreme Court on March 22, 1977 which restrained and enjoined him (1) from appearing in any court in this State, or upon any legal document, as counsel or "friend" for any other person and (2) from preparing any papers or documents to be submitted to any court of this State on behalf of any other person.

"(2) That on April 6, 1977 the respondent, through his signature as 'next friend,' appeared on a document filed in the Superior Court in and for New Castle County in the case of *Hailstone, et al. v. The State of Delaware, et al.*, C.A. 5126 1977 entitled 'Petition For Writ Of Habeas Corpus.' That on this same date in the same civil action, the respondent personally appeared before Honorable Clarence W. Taylor and argued for the fixing of bail on behalf of the petitioner. Both of these appearances were made on behalf of James Thomas Hailstone.

"(3) That on April 7, 1977, in the same civil action, the respondent, through his signature, appeared on documents filed with the Superior Court entitled (1) 'Request For Findings Of Fact,' (2) 'Memorandum Of Law In Support Of Writ Of Habeas Corpus,' and (3) 'Addendum To Memorandum In Support Of Petition For Habeas Corpus.' On this same date respondent personally appeared before Honorable Clarence W. Taylor and sought leave to act on behalf of the petitioner James Thomas Hailstone during the course of the habeas corpus hearing. The foregoing appearances were made and the documents prepared and filed on behalf of James Thomas Hailstone.

"(4) That in the opinion of Judge Taylor, as stated during the hearing on April 7, 1977, the functions performed by the respondent on the preceding day, April 6, 1977, were authorized by the habeas corpus statutes.

"(5) That at the time of all of the foregoing the Supreme Court order of March 22, 1977 was in full force and effect.

"(6) That when finally told by Judge Taylor at the April 7, 1977 hearing that because of the aforesaid March 22 order he could act no further on behalf of James Thomas Hailstone in the proceeding then before the Superior Court, the respondent complied."

\*    \*    \*    \*    \*    \*

And thereupon the Special Master made the following conclusion of law:

"Without regard to legality or propriety of doing so under normal circumstances where no restraint had been previously imposed on his activities, the actions of the respondent, Thomas Alexander, Jr., in signing and filing legal documents and pleadings, and in appearing before Honorable Clarence W. Taylor of the Superior Court on April 6, 1977 and April 7, 1977 for the purpose of speaking on behalf of and seeking relief for the petitioner in the case of *Hailstone, et al. v. The State of Delaware, et al.*, C.A. 5126, 1977, all with full knowledge of the terms of the order of the Supreme Court dated March 22, 1977, constituted a contempt of the said order and the restraint imposed upon him thereby."

\*    \*    \*    \*    \*    \*

The respondents filed no exception to the Supplemental Report of the Special Master. However, at oral argument, the respondents were permitted to renew their reliance upon the "any one for him" provision of 10 *Del.C.* § 6905 [4] as justification for the activities of Alexander and an associate in the *Hailstone* habeas corpus proceeding, in the face of this Court's restraining order

4. 10 *Del.C.* § 6905 provides in pertinent part:
"Application for a writ of habeas corpus may be made by the party complaining, or anyone for him \* \* \*."

against acting as counsel or "friend" of another in Court or on legal documents. In the *Hailstone* matter, Alexander and an associate signed, verified, and filed the petition for a writ of habeas corpus as "next friend" for *Hailstone* and attempted to act as counsel for him in Court.

■ The Courts are not required to recognize any person who may choose to make representations to the Courts for another under § 6905, regardless of legal capacity and standing so to act. By the restraining order, and the *prima facie* showing upon which it was based, Alexander forfeited and lost whatever legal standing and capacity he may have had to act for another under § 6905. By the orders set forth herein, that forfeiture and incapacity is continued.

■ Moreover, in addition to his loss of personal capacity to act for another under § 6905, Alexander lacked any and all standing under § 6905 for want of a showing of necessity for a surrogate for Hailstone. The petition was not signed by Hailstone nor any reason given for his failure to sign. There was no showing that Hailstone was inaccessible or unable to communicate personally with the Court, by letter or otherwise, to make his own application for release on habeas corpus. A petition to act for another under § 6905 must contain some such showing of necessity.

The analogous Federal rule appears in a companion activity by Alexander in the U. S. District Court for Delaware (*U. S. A. ex rel. Ellers v. Redman, et al.*, C.A. No. 77–204), in which, just as in the Hailstone matter, Alexander sought to act as "next friend" for a petitioner for a writ of habeas. There, in language which we endorse, the Court dismissed the petition, stating:

"In the present case there is nothing to show that Ellers authorized or desired this application to be made on his behalf or that he was inaccessible. The only showing made is that Ellers is confined to the Delaware Correctional Center; however, this Court may take judicial notice that all state prisoners have complete access to the courts. This is reflected from the constant receipt of communications by this Court from state prisoners. Thus, the petition fails to show the necessity for filing the instant petition by a next friend."

And the Court quoted this with approval:

" * * * that right [to act for another in an habeas corpus petition] exists only when the application or complaint for the writ sets forth 'some reason or explanation satisfactory to the court showing why the detained person does not sign and verify the complaint and who 'the next friend' is. It was not intended that the writ of habeas corpus should be availed of, as matter of course, by intruders or uninvited meddlers, styling themselves next friends.' " *Wilson v. Dixon*, 256 F.2d 536, 537–8 (C.A. 9, 1958).

\* \* \* \* \* \*

■ Accordingly, upon the supplemental referral in the contempt proceeding, the following order will be entered by this Court:

IT IS ORDERED, ADJUDGED, AND DECREED:

(1) That the Supplemental Final Report of the Special Master be and it is hereby confirmed;

(2) That the respondents be and they hereby are adjudged guilty of Contempt of the Order of this Court, dated March 22, 1977;

(3) That, as sanction therefor, the respondent Thomas Alexander, Jr., and the chief executive officer of each of the other respondents, shall be imprisoned for a term of 5 months in the custody of the Delaware Correctional Authority; but that the execution of these sentences be and it is hereby suspended, conditioned upon strict and continuing compliance by Thomas Alexander, Jr., and the said officers of the other respondents, with all of the terms and conditions of the injunctive order hereinabove set forth.

\* \* \* \* \* \*

■ Before concluding, we add the following in support of the Special Master's denial of the respondents' claim to the right of jury trial upon the contempt referral,

under 11 *Del.C.* § 1271[5] and *Baldwin v. New York*, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970): There is no merit in this contention. The provision of § 1271 relied upon is part of the Delaware Criminal Code and must be limited to certain types of criminal contempt proceedings, the primary purpose of which is to punish. But the unauthorized practice of law is not a criminal offense in this State as it is in some others. E. g., *Rhode Island Bar v. Automobile Service Assoc.*, R.I.Supr., 55 R.I. 122, 179 A. 139 (1935); *State Bar Assoc. of Conn. v. Connecticut Bank and Trust Co.*, Conn.Supr., 145 Conn. 222, 140 A.2d 863 (1958); and the primary purpose of these proceedings is, and has been, coercive and not punitive.

▬ Clearly, therefore, the instant contempt proceeding is civil in nature. While the distinction between civil and criminal contempt is often not exact, *City of Wilmington v. General Teamsters Local Union*, Del.Supr., 321 A.2d 123 (1974), the general guidelines are determinative in the instant proceeding. The two types of contempt are distinguished not on the basis of the offending action in question, but on the basis of the purpose of the proceeding, which is usually indicated by the type of sanction applied. Dobbs, *Contempt of Court: A Survey*, 56 Corn.L.Rev. 183 (1971). If the purpose is coercive or remedial, the proceeding is civil; if the purpose is punitive, the proceeding is criminal. *State v. Mancari*, Del.Supr., 223 A.2d 81, 82 (1966). Since, as demonstrated by the sanction imposed, the purpose of the instant proceeding was coercive and remedial, not punitive, in that it was brought to coerce the respondents to finally cease and desist from pursuing an improper and persistent[6] course of conduct, it is a civil contempt proceeding as to which § 1271 has no relevancy and there is no right to jury trial.

We find unpersuasive the respondent's assertion that the distinction between the two types of contempt depends on whether the contemnor violates an order made for the benefit of an adverse party or whether he is disrespectful of the Court, citing *In Re Morse*, Vt.Supr., 126 A. 550 (1924). It is conceivable that the violation of an order made for the benefit of an adverse party may be punished as criminal contempt and disrespect of the Court may be handled as civil contempt through coercive remedies. Moreover, under either circumstance, the Court's dignity and processes are violated by the contemnor. See Dobbs at 241. Ultimately, then, whether a proceeding is to punish disrespect of the Court or to afford a remedy to an adverse party depends, in the final analysis, upon the nature of the sanction.

The remedial, coercive nature of the sanction here imposed is manifest. It is remedial and coercive, not punitive, because it is not a determinate sentence designed to punish disobedience to a Court order which cannot be redressed; rather, it is aimed at forcing the respondents to comply with the Court's order, imposing upon the respondents a continuing incentive to refrain from practicing law by relieving them of the burden of imprisonment so long as there is compliance. See *United States v. United Mine Workers of America*, 330 U.S. 258, 305, 67 S.Ct. 677, 702, 91 L.Ed. 884 (1947)

---

5. 11 *Del.C.* § 1271 provides in pertinent part:

"A person is guilty of criminal contempt when he engages in any of the following conduct:

\*   \*   \*   \*   \*   \*

"(3) Intentional disobedience of resistance to the process, injunction, or other mandate of a court; \* \* \*."

Such criminal contempt is classified by the Statute as a Class A misdemeanor carrying a maximum sentence of 2 years imprisonment.

6. In addition to the *Ellers, Hailstone* and other proceedings referred to herein in which Alexander and his associates attempted to appear as "friend" and counsel for others, the record discloses a similar activity purportedly on behalf of Gerald H. Lindell in which Alexander was held in contempt of the Superior Court and sentence to 5 days imprisonment for his insistence upon appearing and acting on behalf of Lindell, despite the Judge's admonitions. [See 11 *Del.C.* § 1271(1) and § 1272 providing for summary disposition of a criminal contempt committed in the presence of the Court and "tending to interrupt its proceedings or to impair the respect due to its authority."]

upholding conditional suspended imprisonment as a proper sanction for civil contempt as a means of compelling obedience, and preserving the civil nature of the sanction even if the suspension is subsequently lifted and the execution of the sentence ordered. See also 39 *Minn.L.Rev.* 447 (1955); 67 *Harv.L.Rev.* 889 (1954). That the sanction may actually have a punitive effect is not determinative; the nature of the contempt proceeding depends on the primary or dominant purpose of the sanction and not its incidental effects. *Gompers v. Bucks Store and Range Co.,* 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911).

Accordingly, there is no merit in the respondents' claim to the right of jury trial in this proceeding.