IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| KEYNETICS INC., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 2022-0006-JTL |
| KEYNETICS SHAREHOLDER TRUST, | ) ) ) | |
| Defendant. | ) ) ) | |
| KEYNETICS SHAREHOLDER TRUST, | ) ) ) | |
| Counterclaim Plaintiff, | ) ) | |
| v. | ) ) | |
| KEYNETICS INC., | ) ) | |
| Counterclaim Defendant. | ) | |

**OPINION IMPOSING SANCTIONS FOR CONTEMPT**

Date Submitted: November 22, 2024
Date Decided: January 27, 2025

Susan W. Waesco, Jacob Perrone, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; Catherine D. Kevane, Marie C. Bafus, FENWICK & WEST LLP, California; *Attorneys for Plaintiff*.

David L. Finger, FINGER & SLANINA, LLC, Wilmington, Delaware; *Attorney for Defendant and Non-Party Gary Lutin*.

**LASTER, V.C.**

A Delaware statutory trust holds shares in an S corporation. The individuals who contributed the shares to the trust hold beneficial interests in the trust. The company's certificate of incorporation imposes transfer restrictions on its shares, and the parties stipulated to an order applying those same restrictions to transfers of beneficial interests in the trust. In violation of that order, the trustee has attempted four transfers. Each time, the company sought relief. Each time, the court granted it. The court has already held the trust in contempt twice and the trustee in contempt once.

The trustee has again attempted to transfer beneficial interests in violation of the transfer restrictions. The court again finds both the trust and trustee in contempt. Because more limited sanctions have not been effective, this decision appoints a receiver to dissolve the trust, issues an affirmative injunction requiring the trust to withdraw its consent for a pending transfer, issues a prohibitive injunction barring the trustee from managing any trust or other entity holding the company's stock, awards the company its expenses in connection with this motion, and holds the trustee and the individual managing the trustee jointly and severally liable with the trust for all amounts due.[1]

---

[1] This decision uses the term "expenses" to refer collectively to attorneys' fees and amounts paid out of pocket that might colloquially be called expenses. This is how Section 145 of the Delaware General Corporation Law deploys the term. *See, e.g.*, 8 *Del C.* § 145(a) (authorizing a corporation in a proceeding other than one brought by or in the right of the corporation to provide indemnification "against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred"); *id.* § 145(b) (authorizing a corporation in a proceeding

## I.    FACTUAL BACKGROUND

The facts are drawn from the parties submissions, documents of record, and matters suitable for judicial notice. The operative facts are undisputed.[2]

## A.    The Company

Keynetics Inc. (the "Company") is a Delaware corporation headquartered in Boise, Idaho. For tax purposes, the Company has elected to operate as a small business corporation under Subchapter S of the Internal Revenue Code of 1986, as amended, commonly known as an S corporation.

---

brought by or in the right of the corporation to provide indemnification "against expenses including attorneys' fees) actually and reasonably incurred"); *id.* § 145(c) (mandating corporation to indemnify a director or officer who was successful on the merits or otherwise in defending a proceeding "against expenses (including attorneys' fees) actually and reasonably incurred"). The out-of-pocket expenses encompassed by Section 145 are broader than the restricted concept of costs in the statute that authorizes a prevailing party to recover them. *See* 10 *Del. C.* § 5106; *Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Estate Fund*, 68 A.3d 665, 686–88 (Del. 2013).

[2] Citations in the form "Compl. ¶___" refer to paragraphs of the operative complaint. Citations to "First MTE" refer to Keynetics Inc.'s Motion to Enforce Order and Final Judgment and Motion for Contempt Against Keynetics Shareholder Trust. Citations to "Second MTE" refer to Keynetics Inc.'s Motion to Enforce Final Judgments and Fee Award and Motion for Contempt. Citations to "Third MTE" refer to Keynetics, Inc.'s Motion to Enforce Final Judgments, Fee Award and June 26, 2024 Order and Third Motion for Contempt." Citations to "[Filing] Ex. [Number]" refer to exhibits submitted with filings. Citations in the form "Ord. ¶___" refer to paragraphs of the Order and Final Judgment granted on February 15, 2023. Citations in the form "Supp. Ord. ¶___" refer to paragraphs of the Supplemental Order and Final Judgment granted on January 5, 2024. Citations in the form "Second Supp. Ord. ¶___" refer to paragraphs of the Order Granting Keynetics Inc.'s Motion to Enforce Final Judgments and Fee Award and Motion for Contempt granted on June 26, 2024.

An S corporation is a pass-through entity for federal tax purposes. Stockholders in an S corporation report the flow-through of income and losses on their personal tax returns and pay tax at their individual income tax rates. The stockholders in an S corporation thus avoid double taxation.

To qualify for S corporation status, a corporation must meet specific requirements. *See* 26 U.S.C. § 1361(b). One requirement limits an S corporation to not more than 100 stockholders. *Id.* § 1361(b)(1)(A). Another provides that an S corporation cannot "have as a shareholder a person (other than an estate, a trust described in subsection (c)(2), or an organization described in subsection (c)(6)) who is not an individual. *See id.* § 1361(b)(1)(B); 26 C.F.R. § 1.1361-1(f). A transfer of stock to an impermissible holder risks terminating a corporation's S corporation status. *See id.* § 1362(d)(4).

Under Section 1361(c)(2), one type of eligible stockholder is "[a] trust created primarily to exercise the voting power of stock transferred to it." 26 U.S.C. § 1361(c)(2)(A)(iv). This decision uses the term "IRS Voting Trust" to refer to a trust that qualifies as a voting trust under the Internal Revenue Code.

For tax purposes, "each beneficiary of [an IRS Voting Trust] shall be treated as a shareholder" in the S corporation. *Id.* § 1361(c)(2)(B)(iv). In other words, a transfer of a beneficial interest in an IRS Voting Trust to an ineligible stockholder can result in the termination of S corporation status.

To protect its S corporation status, the Company's certificate of incorporation (the "Charter") imposes the following transfer restriction:

3

> If the Corporation determines that a substantial purpose or effect of a proposed stock transfer would be reasonably likely to adversely affect the Corporation's status as an electing small business corporation under Subchapter S of the Internal Revenue Code, the Corporation may prohibit such transfer by notice to the proposed transferor. Furthermore, to ensure compliance with the restrictions referred to herein, the Corporation may refuse to acknowledge transfers in its books and records that are made in violation of the foregoing and may issue appropriate "stop transfer" certificates or instructions.

Charter § 4.3 (the "Charter Restriction"). The Company has also entered into stockholder agreements with individual stockholders that give the Company a right of first refusal on any transfer of shares (the "Contractual Restrictions"; jointly with the Charter Restriction, the "Transfer Restrictions"). Any acquirer of shares must agree to abide by the Contractual Restrictions. As a matter of Delaware law, the shares always remain subject to the Charter Restriction. *See* Ord. ¶ 2; Supp. Ord. ¶ 3.

### B.     The Delaware Trust

In 2019, Gary Lutin, Lewis DePayne, Daniel Henderson, and Steven Rouse formed a Delaware statutory business trust named the Keynetics Shareholder Trust. This decision refers to that entity as the "Delaware Trust." An entity called Fair Value Investments Inc. is the trustee of the Delaware Trust (the "Trustee"). Gary Lutin serves as Chairman of the Trustee. In that role, Lutin controls the Trustee. Through the Trustee, Lutin controls the Delaware Trust.

The Delaware Trust sought to qualify as an IRS Voting Trust. To that end, DePayne, Henderson, and Rouse contributed shares of Company stock to the Delaware Trust. In return, they received beneficial interests in the Delaware Trust.

4

The shares that DePayne, Henderson, and Rouse deposited remained subject to the Charter Restrictions. As the new owner of the shares, the Delaware Trust was bound by the Charter Restrictions. In addition, as stockholders, DePayne, Henderson, and Rouse had agreed to the Contract Restrictions. As the successor owner of the shares, the Delaware Trust was bound by the Contract Restrictions. In addition, each of the beneficial owners agreed that the beneficial interests they received were "subject to any applicable restrictions on the Participant's transfer of shares." Compl. Ex. 5–7.

## C.     The First Attempted Transfer

On August 9, 2021, the Delaware Trust informed the Company that John F. Tully had agreed to buy beneficial interests in the Delaware Trust. Surprisingly, the Trustee disputed whether the Transfer Restrictions applied to a transfer of beneficial interests. For his part, Tully refused to accept the Transfer Restrictions.

On September 8, 2021, the Company notified the Trustee that because Tully had not agreed to the Transfer Restrictions, the Company would not make an upcoming distribution to Tully. Technically, any Company-level distribution should have flowed to the Delaware Trust and then from the Delaware Trust to the owners of its beneficial interests. But the Company and the Delaware Trust agreed that the Company would make distributions directly to the holders of beneficial interests. The Company did not want to make a distribution to Tully because it would imply that the transfer of beneficial interests had become effective.

Five day later, the Delaware Trust informed the Company that Tully had terminated his agreement to buy the beneficial interests. But the Delaware Trust warned that a new agreement would be negotiated soon.

**D.      The Second Attempted Transfer**

On October 8, 2021, the Trustee informed the Company that the Delaware Trust and Tully had entered into an agreement dated October 5, 2021 (the "Tully Agreement"). Under that agreement, the Delaware Trust purported to have transferred to Tully beneficial interests in the Delaware Trust corresponding to forty shares of Company stock previously contributed DePayne and Henderson. *See* Compl. Ex. 14.

The Company insisted that Tully acknowledge and agree to the Transfer Restrictions. The Delaware Trust refused and asserted that the Transfer Restrictions did not apply to a transfer of beneficial interests in the Delaware Trust.

**E.      The Third, Fourth, And Fifth Attempted Transfers**

On November 12, 2021, the Trustee notified the Company of two additional agreements. The first purported to assign beneficial interests in the Delaware Trust corresponding to ownership of ten Company shares from DePayne to Tully. The second purported to assign beneficial interests in the Trust corresponding to ownership of ten Company shares from Henderson to Tully.

The Company sought confirmation that DePayne and Henderson had required Tully to agree to be bound by the Transfer Restrictions. *See* Compl. Ex. 17. The Trustee maintained that Tully was not bound by the Transfer Restrictions.

6

On November 17, 2021, the Trustee informed the Company that another potential purchaser wanted to acquire beneficial interests in the Delaware Trust. The Company asked for confirmation that the potential purchaser would abide by the Transfer Restrictions. *See* Compl. Ex. 18. The Trustee again claimed that a purchaser of beneficial interests had no obligation to acknowledge the Transfer Restrictions. *See* Compl. Ex. 19.

On December 20, 2021, the Trustee notified the Company of still another transfer. This time, Rouse purported to transfer to Tully beneficial interests in the Delaware Trust corresponding to 134,638 shares of the Company's common stock (half voting, half non-voting). *See* Compl. Ex. 12. The Company sent a letter to the Trustee insisting that Tully agree to be bound by the Transfer Restrictions. *See* Compl. Ex. 18. The Trustee again responded that the Transfer Restrictions did not apply.

**F.    The Lawsuit**

The Company sued the Delaware Trust for breach of the Transfer Restrictions and to invalidate the transfers. The Company sought injunctive relief to prevent further impermissible transfers and declaratory relief to ensure any transferees are bound by the Transfer Restrictions.

The Company sought this relief because even a single transfer of beneficial interest in the Delaware Trust to an impermissible stockholder could jeopardize its S corporation status. So too could transfers to new owners that would cause the Company to exceed 100 stockholders. Because the Trustee took the position that

7

transferees were not bound by the Transfer Restrictions, a holder of beneficial interests in the Delaware Trust could effectuate a sufficient number of downstream transfers to exceed the 100-stockholder limit.

The parties filed cross-motions judgment on the pleadings. During the hearing, the Trustee's counsel agreed that the Transfer Restrictions applied to transfers of beneficial interests in the Delaware Trust. His agreement on that point resolved the case. At the end of the hearing, the parties agreed to draft a stipulated order and final judgment, which the court entered on February 15, 2023 (the "Final Judgment").

The Final Judgment stated explicitly that beneficial interests in the Delaware Trust, defined as "Trust Certificates," were subject to the Transfer Restrictions to the same extent as Company shares. The pertinent language stated:

> The Trust Certificates, including the corresponding beneficial ownership interests in Keynetics' common stock held in record name by the Trust, are bound by, and may only be transferred in compliance with, applicable laws and any restrictions on ownership or transfer set forth in: (i) Article 4.3 of Keynetics Inc.'s Amended Certificate of Incorporation, as amended on June 23, 2010, which is attached as Exhibit 1 to Keynetics Verified Complaint in the Action; and (ii) the agreements pursuant to which record ownership of the stock was originally issued to or acquired by each of Daniel Henderson, Lewis DePayne and Steven Rouse, which agreements are attached as Exhibits 2 through 4 to Keynetics' Verified Complaint in the Action.

Ord. ¶ 2. The parties further agreed that the Company could declare all of the transfers to Tully void unless he confirmed that he would abide by the Transfer Restrictions. Tully eventually agreed. *See* First MTE Ex. 6 at 2.

8

## G.	The First Motion to Enforce

On October 19, 2023, the Trustee sent the Company an agreement contemplating Tully transferring beneficial interests in the Trust corresponding to twenty shares (half voting, half non-voting) to Keynetics-Clickbank Investments, Inc. ("Clickbank"). Lutin serves as Clickbank's President. The Trustee offered the Company a right of first refusal at a price of $101 per voting share and $99 per non-voting share. The Trustee purported to offer the right of first refusal voluntarily and not because of the Transfer Restrictions or the Final Judgment.

Under the Internal Revenue Code, a C corporation is not an eligible stockholder in an S corporation. 26 § 1361(b)(1)(B); 26 C.F.R. § 1.1361-1(f). Clickbank was a C corporation, so the transfer would jeopardize the Company's status as an S corporation.

On October 30, 2023, the Company sent a stop transfer notice to the Delaware Trust. The notice instructed the Trustee to treat the transfers as void *ab initio*.

On November 6, 2023, the Trustee rejected the stop transfer notice, claiming that the Transfer Restrictions did not bar the attempted assignment. On November 15, the Company moved to enforce the Final Judgment and asked the court to hold the Delaware Trust in contempt (the "First Motion to Enforce"). On November 29, the court entered an Order to Show Cause requiring the Delaware Trust to "show cause why they are not in contempt and why coercive and remedial sanctions should not be imposed." Dkt. 69 at 2–3. The Delaware Trust did not respond to the Order to Show Cause.

9

On January 5, 2024, the court entered a Supplemental Order and Final Judgment (the "Supplemental Judgment") granting the First Motion to Enforce. The Supplemental Judgment stated:

> As a clarification of the [Final Judgment], and for the avoidance of any doubt, any transfer, assignment, or attempted transfer or assignment of any interest in (i) the Trust, (ii) the Trust Certificates, or (iii) the shares of Keynetics common stock held in record name by the Trust shall be subject to any and all restrictions on ownership or transfer set forth in (a) the Charter Transfer Restriction, and (b) the agreements pursuant to which record ownership of the Keynetics stock was originally issued to or acquired by each of Daniel Henderson, Lewis DePayne, and Steven Rouse, which agreements are attached as Exhibits 2 through 4 to Keynetics' Verified Complaint in this Action.

Supp. Ord. ¶ 3. The Court held that the assignment agreement to Clickbank violated the Final Judgment and that the transfers were void *ab initio*.

As a remedial sanction for its contempt, the Court ordered the Delaware Trust to pay 100% of the expenses the Company incurred (the "First Fee Award"). The Company's counsel filed Rule 88 affidavits documenting $117,450 in expenses. No one objected to that amount.

## H. The Second Motion to Enforce

On February 26, 2024, the day before the deadline for paying the First Fee Award, the Trustee sent the Company an agreement in which Tully purported to assign to the Delaware Trust beneficial interests in the Delaware Trust corresponding to 1,164 shares (half voting and half non-voting). The Trustee offered the Company a right of first refusal at $101.91 per voting share and $99.91 per non-voting share. *See* Second MTE Ex. 4. The Trustee characterized the assignment as an attempt raise funds so that the Company could pay the First Fee Award.

10

The Company issued a stop transfer notice to the Delaware Trust. The Trustee responded that "no actions will be taken to proceed with any transaction," but refused to sign an acknowledgement that the transaction had been terminated. Second MTE Ex 8.

On March 4, 2024, the Trustee sent the Company an agreement purporting to assign Tully's interests in 100,000 shares (half voting, half non-voting) to Clickbank. The Trustee offered the Company a right of first refusal at $101.91 per voting share and $99.91 per non-voting share, for a total price of over $10 million.

On March 6, 2024, the Company sent a stop transfer notice to the Trustee. On March 8, the Trustee rejected the stop transfer notice on the grounds that "there is currently no transfer to be stopped." Second MTE Ex. 12. The Trust claimed the transfer would become effective "only if some future condition establishes a termination of the Trust prior to its existing 2026 termination date." *Id.*

On April 29, 2024, the Company filed a second motion to enforce final judgment and for contempt (the "Second Motion to Enforce"). On May 6, the Court ordered the Delaware Trust to show cause why it was not in contempt. The Delaware Trust did not respond.

On June 26, 2024, the court held a hearing on the Second Motion to Enforce. Lutin attended and spoke at the hearing. The court ruled that the Delaware Trust had not discharged the order to show cause. The court therefore entered an order that

- held the Delaware Trust in contempt of the Final Judgment and First Fee Award;

11

- imposed *per diem* fine on the Delaware Trust of $3,000 for each day it remained in contempt;

- declared the transfers *void ab initio*;

- ordered the Delaware Trust not to proceed with the challenged transfers;

- awarded the Company its expenses (the "Second Fee Award");

- found Lutin jointly and severally liable with the Trust for the Second Fee Award;

- imposed a *per diem* fine on Lutin of $3,000 for each day the Delaware Trust is in contempt of the Second Fee Award;

- held the Delaware Trust will be dissolved if it fails to pay either the First Fee Award or the Second Fee Award within thirty days of the entry of the Second Supplemental Judgment.

Second Supp. Ord. (the "Second Supplemental Judgement").

## I.     The Third Motion To Enforce

On July 29, 2024, the Trustee sent the Company an "Agreement for Assignment of Beneficial Ownership Interests in Common Stock of Keynetics Inc. Issued to Keynetics Shareholder Trust." (the "July Assignment"). Third MTE Ex. 1. In the July Assignment, Tully purported to assign beneficial interests in 10,000 shares (half voting, half non-voting) to Clickbank at a share price of $126 per voting share and $124 per voting share. On July 31, the Company issued a stop transfer notice based on the Charter Restriction. The Trustee took the position that the Charter Restriction did not apply to an assignment of beneficial interests. Third MTE Ex. 3. On August 12, the Company filed its Motion to Enforce Final Judgment, Fee Award and June 26, 2024 Order and Third Motion for Contempt (the "Third Motion to Enforce").

12

## II. LEGAL ANALYSIS

The Company seeks to have the Delaware Trust, the Trustee, and Lutin held in contempt for violating the court's orders. The court finds that all three are in contempt. Because all three have repeatedly violated the court's orders, and because lesser sanctions have not been effective, the court appoints a receiver to manage the Delaware Trust. The court also awards the Company its expenses and imposes liability jointly and severally on the Delaware Trust, the Trustee, and Lutin.

Court of Chancery Rule 70 authorizes the court to hold a party in contempt for a "failure to obey a restraining or injunctive order, or to obey or to perform any order . . . ." Ch. Ct. R. 70(b). "When an asserted violation of a court order is the basis for contempt, the party to be sanctioned must be bound by the order, have clear notice of it, and nevertheless violate it in a meaningful way." *TransPerfect Glob., Inc. v. Pincus*, 278 A.3d 630, 644 (Del. 2022). The movant has the burden of proof and must establish the contemptuous conduct by a preponderance of the evidence. *Id.* If the movant establishes a *prima facie* case, the burden shifts to the respondent to show why they were unable to comply with the order. *Id.* at 645. A party that has obtained a court order may seek an order of civil contempt against the opposing party "to coerce obedience to [the] order." *T.R. Invs. LLC v. Genger*, 2012 WL 5471062, at *2 (Del. Ch. Nov. 9, 2012) (internal quotations omitted).

## A. The Delaware Trust's Ongoing Contempt

The Delaware Trust has repeatedly disregarded the court's orders. This court previously ordered the Delaware Trust to pay the Company's expenses in the amount

of $117,450. Dkt. 85 at 2. The court ordered the Delaware Trust to pay that amount on or before February 27, 2024. *See id.* at 2. To date, the Delaware Trust has not paid.

After the Delaware Trust failed to pay the award and attempted a third impermissible transfer, this court held the Delaware Trust "in contempt of the Final Judgment and Fee Award." Second Supp. Ord. ¶ 2. To coerce compliance, the court imposed a per diem fine of $3,000 for each day the Delaware Trust remained in contempt. Second Supp. Ord. ¶ 3. This court also awarded the Company the expenses incurred in connection with the Second Motion to Enforce. Second Supp. Ord. ¶ 7. The Company submitted another Rule 88 affidavit. *See* Dkt. 110. Through inadvertent oversight, the court failed to enter an order approving the amount sought. Even though a portion of the amount could not be disputed, the Delaware Trust has not paid any amount in compliance with the second contempt order.

By identifying the Delaware Trust's violations of the court's orders, the Company has established a *prima facia* case of contempt. The Delaware Trust responds that it cannot be held in contempt because it lacks the funds to comply with the court's order.

An inability to comply with an order can be a valid defense to contempt. *See State ex rel. Oberly v. Atlas Sanitation Co.*, 1988 WL 884894 at *2 (Del. Ch. Aug. 17, 1988). But the Delaware Trust cannot prove impossibility.

The Delaware Trust's stated reason for not paying the awards is that "[t]he Trust . . . has no assets of its own." Dkt. 117 ¶ 15. The Delaware Trust insists it "merely owns . . . legal title [to the shares of Company common stock it holds], with

14

no beneficial interest," thus making it "immune from claims of judgment creditors against the [Delaware] Trust." Dkt. 117 ¶ 15; *see also* Dkt. 125 at 34–35. During oral argument, defense counsel asserted that the Delaware Trust merely owns the "voting rights" associated with the shares. Dkt. 125 at 35. After the court asked what that meant, defense counsel elaborated: "Record ownership is transferred to the trust. Beneficial ownership remains with the beneficiaries." Dkt. 125 at 38.

The Delaware Trust thus claims that because it has beneficial owners, it cannot transfer any of its property. In making these arguments, the Delaware Trust creates confusion by shifting among three different legal relationships.

The first type of relationship is an IRS Voting Trust, which is "[a] trust created primarily to exercise the voting power of stock transferred to it." 26 U.S.C. § 1361(c)(2)(A)(iv). An IRS Voting Trust is not a separate type of legal entity. Instead, a type of entity authorized by another source of law (including the common law) can qualify as an IRS Voting Trust if it meets the requirements in the IRS regulations. If it does, then the IRS Voting Trust is a permissible stockholder for an S corporation. But an IRS Voting Trust is not a distinct entity in its own right.

The second type of relationship is a voting trust authorized by Section 218(a) of the Delaware General Corporation Law (a "DGCL Voting Trust"). That section states:

> One stockholder or 2 or more stockholders may by agreement in writing deposit capital stock of an original issue with or transfer capital stock to any person or persons, or entity or entities authorized to act as trustee, for the purpose of vesting in such person or persons, entity or entities, who may be designated voting trustee, or voting trustees, the right to vote thereon for any period of time determined by such agreement, upon

15

the terms and conditions stated in such agreement. The agreement may contain any other lawful provisions not inconsistent with such purpose. After delivery of a copy of the agreement to the registered office of the corporation in this State or the principal place of business of the corporation, which copy shall be open to the inspection of any stockholder of the corporation or any beneficiary of the trust under the agreement daily during business hours, certificates of stock or uncertificated stock shall be issued to the voting trustee or trustees to represent any stock of an original issue so deposited with such voting trustee or trustees, and any certificates of stock or uncertificated stock so transferred to the voting trustee or trustees shall be surrendered and cancelled and new certificates or uncertificated stock shall be issued therefore to the voting trustee or trustees. In the certificate so issued, if any, it shall be stated that it is issued pursuant to such agreement, and that fact shall also be stated in the stock ledger of the corporation. The voting trustee or trustees may vote the stock so issued or transferred during the period specified in the agreement. Stock standing in the name of the voting trustee or trustees may be voted either in person or by proxy, and in voting the stock, the voting trustee or trustees shall incur no responsibility as stockholder, trustee or otherwise, except for their own individual malfeasance.

8 *Del. C.* § 218(a). Under this statute, a common law trust that meets the requirements of Section 218(a) can qualify as a DGCL Voting Trust. Such a trust might also qualify as an IRS Voting Trust. But a DGCL Voting Trust is not a thing in its own right.

The third type of relationship is a statutory trust created under the Delaware Statutory Trust Act (a "Delaware Statutory Trust"). A Delaware Statutory Trust is a jural entity that enjoys separate legal personhood. 12 *Del. C.* § 3801(i). Like other jural entities, "a statutory trust may be sued for debts and other obligations or liabilities contracted or incurred by the trustee or other authorized persons . . . ." 12 *Del. C.* § 3804(a). Not only that, but "[i]n a judicial proceeding involving a trust, the court, as justice and equity may require, may award costs and expenses, including

16

reasonable attorneys' fees, to any party, to be paid by another party or from the trust that is the subject of the controversy." 12 *Del. C.* § 3584. This court has ordered a Delaware Statutory Trust to pay attorneys' fees and costs. *In re David & Joan Traitel Fam. Tr.*, 2022 WL 2570793, at *5 (Del. Ch. Jul. 8, 2022), *adopted sub nom. In re Joan Traitel Fam. Tr.* 2022 WL 3544379 (Del. Ch. Aug. 16, 2022).

The Delaware Trust is a Delaware Statutory Trust. It might well also qualify as a DGCL Voting Trust, and the parties seem to agree that it qualifies as an IRS Voting Trust. The court need not address those questions. What matters for purposes of a contempt motion is that the Delaware Trust is a jural entity that has the powers conferred by the Delaware Statutory Trust Act. As a jural entity, the Delaware Trust can be found in contempt and required to pay a contempt sanction. If the Delaware Trust lacks funds, a creditor can levy on its assets. Because the Delaware Trust holds legal title to Company shares, a creditor can reach and levy on those assets. The fact that the Delaware Trust holds them for the ultimate benefit of holders of beneficial interests does not matter, any more than the fact that a corporation owns assets for the ultimate benefit of its stockholders. The Delaware Trust is not a will-o'-the-wisp; it has no legal basis to claim that satisfying a contempt sanction is impossible.

Additionally, under the Delaware Trust's governing document, the Trustee must pay any contempt sanction. By default, a trustee is not liable for the obligation of a Delaware Statutory Trust simply by virtue of acting as a trustee. The operative provision states:

> Except to the extent otherwise provided in the governing instrument of a statutory trust, a trustee, when acting in such capacity, shall not be

17

personally liable to any person other than the statutory trust or a beneficial owner for any act, omission, or obligation of the statutory trust or any trustee thereof.

12 *Del. C.* § 3803(b). In this case, however, the governing instrument of the Delaware Trust provides as follows:

The Trustee will assume responsibility for all costs of the Trust's duties relating to a Participant's Investments, and for management of the Trust's operation. The Trust may not charge any costs directly or indirectly to Participants, including those for engagement of legal representation that may be required to support Investment rights, unless such charges are either (a) accepted specifically by each participant concerned and reported to all Participants or (b) permitted by an Amendment of these Provisions.

Compl. Ex. 8 at 5**.** The Delaware Trust's governing document thus "otherwise provided."

Relief can also extend to Lutin, because he has taken responsibility for the Delaware Trust's actions. *See* Dkt. 80 ("Addressing the Court's likely concern about the Trust's previous failure to appear, I [Gary Lutin] want to assure the Court that this was the result of my personal bad judgment rather than any lack of respect for the Court."). Lutin executed the Answer to the Verified Complaint and Verified Counterclaims. *See* Dkt. 26 ("I, Gary Lutin, do hereby depose and state that I am duly authorized to execute this Verification on behalf of defendant Keynetics Shareholder Trust . . ."). The Delaware Trust did not have counsel from February 15, 2023 to September 12, 2024. *See* Dkt. 70; Dkt. 116. During this time, Lutin regularly corresponded with the Company's counsel and the court. *See* Dkt. 80; Dkt. 86; Dkt. 105.

18

The Delaware Trust and its Trustee have demonstrated their ability to pay debts. The Delaware Trust has employed several law firms during this litigation. *See* Dkt. 16, Dkt. 41, Dkt. 116. The Delaware Trust also retained counsel during a prior action. *See Keynetics Shareholder Trust v. Keynetics Inc.*, C.A. No. 2017-0929-SG. And the Delaware Trust has retained CT Corporation as its resident agent. The Delaware Trust knows how to pay its creditors when it wants to. Lutin can also pay.

The Delaware Trust's impossibility defense therefore fails. The Delaware Trust remains in contempt of the Final Judgment. The Delaware Trust also remains in contempt for failing to pay the First Fee Award. Because the court never fully quantified the Second Fee Award the court will not hold the trust in contempt for not paying the Company's expenses under the Second Supplemental Judgment, even though at least some amounts due were not reasonably subject to dispute.

## B. The Latest Act Of Contempt

The Company argues that the July Assignment constitutes a further act of contempt because Tully purported to transfer the beneficial interests in shares of Company common stock to Clickbank. *See* Third MTE Ex. 1. The Final Judgment makes clear that the Transfer Restrictions apply to "Trust Certificates . . . including the corresponding beneficial ownership interests in Keynetics' common stock held in record name by the Voting Trust . . . ." Ord. ¶ 2. The Supplemental Judgment confirms that the Transfer Restrictions apply to "any interest in (i) the Voting Trust, (ii) the Trust Certificates, or (iii) the shares of Keynetics common stock held in record

19

name by the Voting Trust." Supp. Ord. ¶ 3. This assignment violates the Final Judgment. The Delaware Trust again stands in contempt.

## C. The Appropriate Remedy

The Company seeks remedies for repeated and ongoing acts of contempt by the Delaware Trust and the Trustee. The court will appoint a receiver for the Delaware Trust, award the Company its expenses, and impose liability jointly and severally on the Delaware Trust, the Trustee, and Lutin.

"The court has broad discretion when formulating a remedy for contempt." *Gandhi-Kapoor v. Hone Cap. LLC*, 305 A.3d 707, 720 (Del. Ch. 2023). The sanctions can be either civil or criminal. *DiSabatino v. Salicete*, 671 A.2d 1344, 1348 (Del. 1996). Sanctions for civil contempt are designed to coerce compliance with a court's order or to make an injured party whole. *Del. State Bar Ass'n v. Alexander*, 386 A.2d 652, 665 (Del. 1978); *City of Wilmington v. Gen Teamsters Loc. Union 326*, 321 A.2d 123, 125 (Del. 1974). Sanctions for criminal contempt, by contrast, are meant to punish. *Gen Teamsters Loc. Union 326*, 321 A.2d at 125.

### 1. The Injunction

The Company seeks a permanent injunction requiring the Delaware Trust to withdraw its consent to the July Assignment. To obtain a permanent injunction, "a party must show (i) actual success on the merits, (ii) the inadequacy of remedies at law, and (iii) a balancing of the equities that favors an injunction." *In re COVID-Related Restrictions on Religious Servs.*, 285 A.3d 1205, 1232–33 (Del. Ch. 2022), *aff'd*, 326 A.3d 626 (Del. 2024). "[I]mminent irreparable harm is not a requirement

20

for a permanent injunction." *Id.* at 1230. Because a permanent injunction is a final remedy, "what matters is whether there is a basis for equity to act, namely the absence of an adequate remedy at law." *Id.* The need to stop a threat of imminent irreparable harm is one way to show that a legal remedy would be inadequate, but it is not the only way. *Id.*

First, the Company has succeeded on the merits. The July Assignment violates the Final Judgement, the Supplemental Judgment, and the Second Supplemental Judgement.

Second, the Company has shown that remedies at law are inadequate. The July Assignment threatens the Company with the loss of its S corporation status. Losing S corporation status will affect the Company's tax structure. Although the loss could be quantified, doing so reliably would be quite difficult. Injunctive relief is preferable and warranted. *See A.W. Chesterton Co. v. Chesterton*, 907 F. Supp. 19, 24 (D. Mass. 1995) (finding loss of S corporation status constituted irreparable harm under similar circumstances).

Third, the Company has shown that the equities favor relief. In the face of the Company's showing of irreparable harm, the Delaware Trust would merely be required to comply with its own agreements and court orders. Any theoretical harm to the Delaware Trust is self-inflicted.

The Trustee argues that the request for an injunction is moot, because the Trustee claims to have committed not to move forward with the assignment. Dkt. 117 ¶ 9. That is an empty promise. Given the Trustee's pattern of behavior, the court has

21

every reason to expect the Delaware Trust will attempt to renew the July Assignment. A mandatory injunction will issue directing the Delaware Trust to withdraw its consent to the July Assignment. The injunction also will order the Delaware Trust not to recognize the July Assignment or any similar assignment.

### 2. Dissolution

The Company next asks the court to dissolve the Delaware Trust. In the Second Supplemental Judgment, the court warned that it would dissolve the Delaware Trust if the Delaware Trust failed to pay the First Fee Award and the Second Fee Award by July 26, 2024. Second Supp. Ord. ¶ 10. Because the court did not fully quantify the Second Fee Award, this decision does not rely on the Delaware Trust's failure to pay it. Instead, the Delaware Trust's repeated violations of the court's other orders warrants equitable dissolution.

As a court of equity, the Court of Chancery "has the power to order the dissolution of a solvent company and appoint a receiver to administer the winding up of those assets." *See Weir v. JMACK, Inc.*, 2008 WL 4379592, at \*2 (Del. Ch. Sept. 23, 2008). The court may grant equitable dissolution when "gross mismanagement, positive misconduct by corporate officers, breach of trust, or extreme circumstances showing imminent danger of great loss to the corporation which, otherwise, cannot be prevented." *Id.* (quoting *Carlson v. Hallinan*, 925 A.2d 506 (Del. Ch. 2006)); *In re Shawe & Elting LLC*, 2015 WL 4874733, at \*33 (Del. Ch. Aug. 13, 2015) ("The doctrine of equitable dissolution . . . may be invoked in . . . situations involving egregious misconduct in the exercise of one's fiduciary responsibilities.").

22

Equitable dissolution extends to alternative entities. *See In re Carlisle Etcetera LLC*, 114 A.3d 592, 606 (Del. Ch. 2015). Delaware entities "take[] advantage of benefits that the State of Delaware provides, and because dissolution is not an exclusively private matter, the State of Delaware retain an interest in having the Court of Chancery available, when equity demands, to hear a petition to dissolve" a Delaware entity. *Id.* These principles carry over to Delaware Statutory Trusts. *See Grand Acq. LLC v. Passco Indian Springs DST*, 145 A.3d 990, 995–96 (Del. Ch. 2016), *aff'd*, 158 A.3d 449 (Del. 2017).

Where a nonparty seeks equitable dissolution, "that petitioner must 'explain' in a 'convincing manner' why th[e] court should 'invoke equitable principles . . . .'" *See SolarReserve CSP Hldgs., LLC v. Tonopah Solar Energy, LLC*, 2020 WL 1291638, at *5 (Del. Ch. Mar. 18, 2020) (quoting *Absalom Absalom Tr. v. Saint Gervais LLC*, 2019 WL 2655787, at *6 (Del. Ch. June 27. 2019)). The Company has made the necessary showing.

Under the Trustee's direction, the Delaware Trust has repeatedly violated this court's orders. The court has entered two orders to stop transfers that threaten the Company's S corporation status. The Delaware Trust has not complied. The *per diem* fine has not been sufficient. Nor have the awards of expense. A more serious sanction is warranted. *See Delaware State Bar Ass'n*, 386 A.2d at 665. The Delaware Trust,

23

the Trustee, and Lutin also seem to believe they are beyond the reach of this court. These actions demonstrate a pattern of positive misconduct.[3]

By separate order, the court will appoint a receiver to take charge of the Delaware Trust, cause it to comply with the court's prior orders, wind down its operations in a manner that does not jeopardize the Company's status as an S Corporation, and terminate the Delaware Trust's existence. The receiver may seek to enforce the court's orders against the Trustee and Lutin. The receiver may recover the expenses of the receivership from the Delaware Trust's assets, the Trustee, or Lutin.

### 3. A Per Diem Fine Remains An Appropriate Sanction

The Company requests *per diem* sanctions for each day the Delaware Trust and the Trustee remain in contempt. Because the court is appointing a receiver, the court will not impose a *per diem* fee at this time. If the receiver meets with resistance, the receiver may seek the imposition of a *per diem* fee as a coercive sanction.

### 4. The Company's Expenses

The Company seeks to recover the expenses incurred pursing the Third Motion to Enforce. "When a party has been held in contempt, the party injured by the contempt is entitled to an award of expenses for bringing the contempt motion as part

---

[3] *See* Dkt. 73, Ex. A (attempting to extend the deadline to appear rather than comply with the judgement); Dkt. 95, Ex. 4 (attempting to assign the interests of a participant in the trust). *Compare* Dkt. 95, Ex. 5 (informing the Company that the Delaware Trust had financing to pay the judgment), *and* Dkt. 95, Ex. 6 (admitting to the Company the Delaware Trust cannot pay the overdue judgment).

of the remedy that is necessary to make that party whole." *Gandhi-Kapoor v. Hone Cap. LLC*, 305 A.3d 707, 723 (Del. Ch. 2023).

The court awards the Company its expenses (the "Third Fee Award"). The Company will submit a Rule 88 affidavit.

The Delaware Trust has not paid either the First Fee Award of $117,450 or the Second Fee Award. By oversight, the court neglected to rule on the reasonableness of the Company expenses for purposes of the Second Fee Award. Having done so, the court finds that the $109,793 that the Company sought is reasonable and approved.

"In Delaware, prejudgment interest is awarded as a matter of right. Such interest is to be computed from the date payment is due." *Citadel Hldg. Corp. v. Roven*, 603 A.2d 818, 826 (Del. 1992) (citation omitted). The Company is entitled to pre-judgment interest at the legal rate, compounded quarterly, until the date of payment. Interest on the First Fee Award runs from February 27, 2024. Interest on the Second Fee Award runs from the date of this Opinion. Interest on the Third Fee Award will accrue from the date the court approves the application.

### 5.    Sanctions On The Trustee And Lutin

The Company seeks an order (i) holding the Trustee and Lutin jointly and severally liable for the amounts due from the Delaware Trust and (ii) prohibiting the Trustee and Lutin from being involved with any trust or other entity that holds or manages investments in the Company. The Trustee and Lutin are non-parties, but "in appropriate circumstances, an order can be enforced against non-parties." *Deutsch v. ZST Digit. Networks, Inc.*, 2018 WL 3005822, at *10 (Del. Ch. June 14, 2018).

25

"[W]hen obedience to an order may be lawfully enforced against a person who is not a party, that person is liable to the same process for enforcing obedience to the order as if that person were a party." Ch. Ct. R. 71. A court order "generally binds not only the named parties, but also 'those identified with them in interest, in privity with them, represented by them or subject to their control.'" *Deutsch*, 2018 WL 3005822, at *10 (quoting *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945)). This doctrine ensures "that a party cannot nullify or evade an order 'by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding.'" *Deutsch*, 2018 WL 3005822, at *10 (*Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945)).

Lutin bears responsibility for the Delaware Trust's actions. He is the sole decision-maker for the Trustee and the Delaware Trust. *See* Dkt. 80 at 1, Dkt. 59 at 3, 68; Dkt. 94 at 19–22. He alone decides whether the Trustee and the Delaware Trust comply with Transfer Restrictions or the court's orders. *See* Compl. Ex. 8 (outlining the powers of the Trustee and the role of Fair Value Investments, Inc.).

Lutin and the Trustee are therefore jointly and severally liable with the Delaware Trust for the amounts due. To avoid further iterations of the same recurring problems, a permanent injunction will issue barring Lutin and the Trustee from participating in any trust or other entity that holds and manages investments in the Company's stock. The circumstances warrant this extraordinary remedy.

### III. CONCLUSION

For the foregoing reasons, the Company's Third Motion to Enforce is granted. The Company must submit a form of order on notice to the Trustee and the Delaware Trust. The Company also must identify three candidates to serve as receiver.